Present:  All the Justices

JARRIT M. RAWLS

v.  Record No. 052128

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
September 15, 2006

FROM THE COURT OF APPEALS OF VIRGINIA

Jarrit M. Rawls was convicted by a jury in the Circuit Court of Rockingham County of possession of a firearm by a convicted felon in violation of Code § 18.2-308.2.  In an unpublished per curiam opinion, the Court of Appeals denied Rawls' petition for appeal.  Rawls v. Commonwealth, Record No. 2049-04-3 (May 13, 2005).  We awarded Rawls this appeal in which he challenges (1) the validity of his waiver of indictment, (2) the Commonwealth's amendment of the arrest warrant upon which the case was tried, (3) the sufficiency of the evidence to support his conviction, and (4) the denial of his motion for a mistrial upon the jury rendering an initial verdict for twice the mandatory sentence before rendering a verdict for the mandatory sentence after further deliberation.  For the reasons set forth below, we will affirm the judgment of the Court of Appeals.

BACKGROUND

On September 25, 2003 police officers went to Rawls' residence to execute a warrant for his arrest for violating the terms of his probation imposed from a prior criminal conviction. The officers located Rawls in an upstairs bedroom and, following

1

a search of the bedroom, found a .22 caliber handgun between the mattress and box spring of the bed in that room. Subsequently, a warrant was issued charging Rawls with possession of a firearm by a felon in violation of Code § 18.2-308.2 and further describing the charge against Rawls as possession of a firearm "after having been convicted of a felony not defined in § 17.1-805."[1]

Rawls waived his right to a preliminary hearing and filed a motion to waive indictment. At two hearings held thereafter Rawls stated to the trial court his intention to waive indictment and proceed to trial upon the warrant. However, Rawls did not sign a written waiver of indictment in the presence of the trial court as required by Code § 19.2-217.

On the morning of trial, the Commonwealth moved to amend the allegation in the warrant from possession of a firearm after conviction of a felony "not defined in [Code] § 17.1-805" to possession of a firearm after conviction of a felony "as defined in [Code] § 17.1-805." (Emphasis added.) Under the proposed amendment, the reference to Code § 18.2-308.2 remained the same. The Commonwealth contended that the amendment was permissible because Rawls had notice of the charge against him and because the amendment would affect only the available punishment, not the

---

[1] Among other felony convictions, Rawls previously had been convicted for breaking and entering in violation of Code § 18.2-91. Code § 17.1-805 deems certain felonies to be "violent felony offenses," the conviction of which subjects the defendant to enhanced punishment. A violation of Code § 18.2-91 is one of those felonies.

substantive charge. Rawls objected, asserting that since he waived indictment on the original warrant, the case should proceed to trial on the allegations as stated in that warrant.

The trial court granted the Commonwealth's motion to amend the warrant, ruling that the amendment was permissible because the charged offense, possession of a firearm after conviction of a felony, remained the same between the original and amended warrant. The trial court then offered Rawls a continuance. Rawls declined, and the trial proceeded that day as scheduled.

The following evidence was adduced at trial, which was bifurcated into guilt and penalty phases. We will recite the evidence in the light most favorable to the Commonwealth, the prevailing party at trial. Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005); Dixon v. Commonwealth, 270 Va. 34, 37, 613 S.E.2d 398, 399 (2005).

Rawls resided in a four bedroom rental home along with four male roommates. When police officers arrived at this home, they were admitted entry by a man who was in the downstairs living room with two other men. Upon being asked for Rawls, the men directed the officers to a bedroom at the top of the stairs on the second floor.[2] The door to the bedroom was closed. When the officers knocked on the door, Rawls opened it. The officers noted that Rawls was alone in the bedroom, and that Rawls'

---

[2] An officer testified that there were two more men, in addition to Rawls, on the second floor.

3

appearance and clothing suggested that he had been sleeping.  The officers advised Rawls of the warrant for his arrest for a violation of his probation.  Immediately, Rawls blurted out that the bedroom was not his, and that it belonged to his roommate.

Rawls proceeded to dress by selecting an outfit from various articles of clothing that were scattered about the room, including a pair of size ten shoes.  Rawls also gathered two or three pairs of socks to take with him.  One of the officers escorted Rawls from the house and transported him to the Rockingham County Sheriff's Office.

The remaining officers proceeded to search the bedroom.  At the head of the bed, between the mattress and box spring, the officers found a loaded .22 caliber handgun in a holster.

The bedroom also contained several pairs of size ten shoes, but no shoes of any other size.  Male clothing was strewn throughout the bedroom, but no female clothing was found.  In a shoebox, the officers found a pay stub and a Virginia identification card both bearing Rawls' name.  Various other papers bearing Rawls' name were found in another part of the room.  No items were found bearing any other person's name.

In response to subsequent questioning by the police, Rawls maintained that the bedroom belonged to a person named "Softy" or "Maurice." With regard to his own use of the room, Rawls maintained that he kept personal belongings in the room but did not stay there. He admitted that his shoe size was ten.

After the Commonwealth presented its case, Rawls introduced evidence to establish that numerous individuals had access to the bedroom. Generally, the testimony of Rawls' witnesses indicated that although the bedroom belonged to Rawls, the roommates and their friends occasionally used the bedroom to watch television or to sleep. According to the roommates, the front door and bedroom doors of the home were always unlocked.

After deliberation, the jury returned a verdict finding Rawls guilty of the offense charged in the amended warrant. Proceeding to the penalty phase, the trial court instructed the jury that the mandatory punishment was imprisonment for five years.[3] Nevertheless, the jury rendered a verdict for a ten-year sentence. Rawls moved for a mistrial. The trial court denied the motion and explained the instructions to the jury. Upon further deliberation, the jury rendered a verdict for the mandatory sentence of imprisonment for five years.

---

[3] The jury instructions also included an instruction which stated, in part, that "[h]aving found the defendant guilty, you should impose such punishment as you feel is just under the evidence."

5

Rawls filed a post-trial motion to set aside the verdict. In support of this motion, Rawls first argued that his waiver of indictment was invalid because he had not signed it as required by Code § 19.2-217.[4] Rawls also contended that the trial court erred in permitting the Commonwealth to amend the warrant. Rawls asserted that if his waiver of indictment was valid, then that waiver was limited to the original warrant and did not apply to the amended warrant. Rawls further contended that the evidence was insufficient to prove his possession of the firearm. Finally, Rawls contended that the jury's initial rendering of a verdict for a ten-year sentence, after being instructed that five years was the mandatory sentence, required the declaration of a mistrial.

The trial court held a hearing and overruled Rawls' motion to set aside the verdict, rejecting all of Rawls' contentions except his challenge to the validity of his waiver of indictment. Thereafter, in a letter opinion dated May 28, 2004, the trial court denied the motion as to Rawls' challenge to the validity of the waiver of indictment, ruling that while the waiver of indictment did not comply with the statutory requirements of Code § 19.2-217, Rawls waived his objection when he failed to object

---

[4] Code § 19.2-217 provides, in relevant part, that a waiver of indictment must be in "writing signed by such person before the court having jurisdiction to try such felony or before the judge of such court."

6

until after the trial.[5]  Subsequently, the trial court sentenced Rawls to a term of imprisonment of five years in accord with the jury's verdict.

Rawls filed a petition to the Court of Appeals, asserting the same contentions he previously made in the trial court in his motion to set aside the verdict.  The Court of Appeals denied the petition.[6]  The Court of Appeals determined that Rawls was barred from challenging the validity of the waiver of indictment by failing to raise the issue until after the jury returned its verdict.[7]  The Court of Appeals also concluded that the trial court did not err in allowing the Commonwealth to amend the original warrant because the amendment affected only the available punishment, not the "nature and character" of the charged offense.  Additionally, the Court of Appeals held that the evidence was sufficient to support Rawls' conviction and that the trial court did not err in refusing to declare a mistrial after the jury initially returned a verdict for a ten-year

---

[5] Rule 3A:9(b)(2) provides:  "any defense or objection that is capable of determination without the trial of the general issue may be raised by motion before trial.  Failure to present any such defense or objection before the jury returns a verdict or the court finds the defendant guilty shall constitute a waiver thereof."

[6] Rawls exercised his right to have his petition reviewed by a three-judge panel, which refused the petition for the reasons stated in the May 13, 2005 per curiam opinion.

[7] The Court of Appeals based its determination on its Rule 5A:18, which states that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of

sentence rather than the mandatory five-year sentence.  This appeal followed.

DISCUSSION

We will address each of Rawls' four assignments of error in order.  Rawls' first assignment of error states that "[t]he Court of Appeals erred when it ruled that the trial court was not clearly erroneous in proceeding with a trial under a waiver of indictment that failed to comport with the statutory requirements of Virginia Code § 19.2-217."

The requirement that the defendant be indicted is "not jurisdictional and constitutionally imposed but is only statutory and procedural."  See Triplett v. Commonwealth, 212 Va. 649, 650, 186 S.E.2d 16, 17 (1972).  Thus, it may be waived by the defendant.  But, when a defendant insists upon his statutory right to an indictment, "the failure of the trial court to adhere to [that] procedural requirement[] is reversible error."  Id. at 651, 186 S.E.2d at 17.  Here, however, Rawls' assignment of error does not address the determination by both the trial court and the Court of Appeals that he did not timely raise his challenge to the apparent defect in his waiver of indictment because he did not do so until the conclusion of the trial by way of his motion to set aside the jury verdict.  As framed, Rawls' assignment of error does not relate to the procedural determinations of the trial court and the Court of Appeals.  Accordingly, we will not

Appeals to attain the ends of justice."

8

consider the merits of his first assignment of error. Rule 5:17(c).

In his second assignment of error, Rawls challenges the determination of the Court of Appeals that the trial court did not err in allowing the Commonwealth to amend the warrant from charging, under Code § 18.2-308.2, possession of a firearm after conviction of a felony "not defined in [Code] § 17.1-805" to possession of a firearm after conviction of a felony "as defined in [Code] § 17.1-805." Specifically, Rawls contends that if his waiver of indictment was valid then the Commonwealth was required to try him on the original warrant or, if the warrant was amended, then the Commonwealth was required to obtain an indictment on the amended warrant. The Commonwealth responds that Rawls' waiver of indictment on the original warrant did not limit the authority of the trial court to permit amendment of that warrant, "because it did not change the nature of the charge" against Rawls. We agree with the Commonwealth.

No authority supports the proposition implicitly asserted by Rawls that a defendant, by waiving indictment, can preclude the subsequent amendment of a warrant. To the contrary, trial courts have substantial discretion to amend warrants. See Code § 16.1-137 (trial court may, sua sponte or upon motion of a party, "amend the form of the warrant in any respect in which it appears defective"); see also Robinson v. Commonwealth, 206 Va. 766, 769, 146 S.E.2d 197, 200 (1966); Malouf v. City of Roanoke, 177 Va.

9

846, 853, 13 S.E.2d 319, 321 (1941). Furthermore, the rules governing amendment of warrants and indictments should be liberally construed to avoid unnecessary delay by permitting amendment rather than requiring additional proceedings. See Powell v. Commonwealth, 261 Va. 512, 533, 552 S.E.2d 344, 356 (2001); Sullivan v. Commonwealth, 157 Va. 867, 876-77, 161 S.E. 297, 300 (1931). Additionally, the defendant is protected against any unfairness that may result from amendment of a warrant or indictment because the defendant is entitled to a continuance upon a showing that such amendment operated as a surprise. See Code § 16.1-137; see also Code § 19.2-231. Guided by these principles, we hold that a defendant's waiver of indictment does not preclude the amendment of the warrant upon which the defendant is tried. Rather, the permissibility of an amendment to the warrant in that circumstance is governed by the same standards as for an amendment of an indictment.

The Court of Appeals determined that the defendant may be tried on an amended warrant so long as the amendment does not change the nature or character of the offense charged in the original warrant. The Code does not specify that the "nature or character" test is the standard for determining whether an amendment to a warrant is proper. The nature and character of the offense test, however, is set forth in Code § 19.2-231 governing amendment of indictments. Code § 19.2-231 provides:

10

If there be any defect in form in any indictment, presentment or information, or if there shall appear to be any variance between the allegations therein and the evidence offered in proof thereof, the court may permit amendment of such indictment, presentment or information, at any time before the jury returns a verdict or the court finds the accused guilty or not guilty, provided the amendment does not change the nature or character of the offense charged. After any such amendment the accused shall be arraigned on the indictment, presentment or information as amended, and shall be allowed to plead anew thereto, if he so desires, and the trial shall proceed as if no amendment had been made; but if the court finds that such amendment operates as a surprise to the accused, he shall be entitled, upon request, to a continuance of the case for a reasonable time.

(Emphasis added.)

While we recognize that the requirements for warrants and indictments are not identical, the two are similar in that both must describe the offense of which the defendant is charged. See Rule 3A:4; Rule 3A:6(a) (formerly Rule 3A:7(a)); Code § 19.2-72, Greenwalt v. Commonwealth, 224 Va. 498, 501, 297 S.E.2d 709, 710-11 (1982). We have held with regard to both warrants and indictments that the allegations therein must be sufficient to notify the accused of the nature and character of the offense charged. Wilder v. Commonwealth, 217 Va. 145, 147, 225 S.E.2d 411, 413 (1976); Greenwalt, 224 Va. at 501, 297 Va. at 711. The limitation on amendment to indictments in Code § 19.2-231 to amendments that do not change the nature or character of the offense is clearly intended to protect the defendant from being deprived of notice of the offense charged. Since a warrant serves the same purpose of notifying the defendant of the nature

11

and character of the charged offense, it follows that the same test should apply to amendment of the warrant upon which the case against the defendant proceeds. Thus, the Court of Appeals was correct to apply the nature or character test in determining the permissibility of the amendment to the warrant in this case. Accordingly, we turn now to consider whether the Court of Appeals erred in concluding that the amendment to the warrant in this case did not change the nature or character of the offense charged.

Initially, we note that the original warrant would have been sufficient to notify Rawls of the nature and character of the offense charged even if it had omitted any reference to Code § 17.1-805 because it clearly described Rawls' unlawful conduct as possession of a firearm by a convicted felon, identified Code § 18.2-308.2 as the statute proscribing that conduct, and included all other information required by statute. See Code § 19.2-72. Notwithstanding that the reference to Code § 17.1-805 in the warrant was unnecessary, its inclusion requires our consideration whether the amendment changing the prior felony from one "not defined in [Code] § 17.1-805" to one "as defined in [Code] § 17.1-805" changed the nature or character of the offense of possession of a firearm by a convicted felon as that offense is defined in Code § 18.2-308.2. The statutory scheme contained in the statute guides our analysis.

Code § 18.2-308.2(A) provides, in relevant part, that:

12

It shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess . . . any firearm . . . . Any person who violates this section shall be guilty of a Class 6 felony.  However, any person who violates this section by knowingly and intentionally possessing . . . any firearm and who was previously convicted of a violent felony as defined in § 17.1-805 shall be sentenced to a mandatory minimum term of imprisonment of five years.  Any person who violates this section by knowingly and intentionally possessing . . . any firearm and who was previously convicted of any other felony within the prior 10 years shall be sentenced to a mandatory minimum term of imprisonment of two years.[8]

Code § 18.2-308.2(A) defines as a Class 6 felony the possession of a firearm by any person who previously has been convicted of a felony.[9]  Beyond question, the defendant's possession of a firearm and the fact that the defendant is a convicted felon are essential elements of the offense created by this statute and, thus, must be proven by the Commonwealth beyond a reasonable doubt.  See Powers v. Commonwealth, 211 Va. 386, 388, 177 S.E.2d 628, 629 (1970).  With regard to the Commonwealth's burden to prove that the defendant is a convicted felon, that burden is satisfied upon proof that the defendant previously has been convicted of any felony because Code § 18.2-

---

[8] Absent mandatory minimum sentences such as those contained in Code § 18.2-308.2, Class 6 felonies are generally punishable by no less than one and no more than five years imprisonment.  Code § 18.2-10.

[9]Code § 18.2-308.2 also applies to juveniles committing certain offenses that would be classified as felonies if committed by an adult.  These provisions are not implicated in this case.

13

308.2(A) applies with blanket effect to persons previously convicted of any felony.

For purposes of determining the sentence to be imposed upon the defendant who violates Code § 18.2-308.2(A), however, this statute makes a significant distinction between a prior conviction of "any other" felony and a prior conviction of a felony specifically designated as a "violent felony" under Code § 17.1-805. Under the statutory scheme set forth in Code § 18.2-308.2(A), when it is established that the defendant was previously convicted of such a violent felony, the mandatory minimum sentence is a term of imprisonment of five years. Since a violation of Code § 18.2-308.2(A) is a Class 6 felony punishable under Code § 18.2-10 by a term of imprisonment between one and five years, the mandatory minimum sentence for a defendant convicted of possession of a firearm after a previous violent felony conviction equals the statutory maximum sentence. Conversely, in cases involving a prior conviction of any other felony, the mandatory minimum sentence is a term of imprisonment of two years under Code § 18.2-308.2(A). Thus, under this statutory scheme, a defendant who was previously convicted of any felony other than one designated as a violent felony under Code § 17.1-805 is subject to a sentence of a term of imprisonment of two years (the mandatory minimum) to five years (the maximum).

Undoubtedly, under this statutory scheme the Commonwealth is required to prove beyond a reasonable doubt that the defendant

14

was previously convicted of a violent felony, designated as such under Code § 17.1-805, in order to establish that the defendant is subject to the five-year mandatory minimum sentence to be imposed under Code § 18.2-308.2(A).  Cf. Washington v. Commonwealth, 272 Va. ___, ___, ___ S.E.2d ___, ___ (decided today) (proof of a defendant's prior predicate convictions admissible during guilt phase of trial to establish liability for enhanced punishment).  Absent such proof, the defendant is subject to imprisonment for a term of between two years and five years.  While proof of the defendant's prior felony conviction is an essential element of the substantive offense under Code § 18.2-308.2(A), the nature of that prior felony conviction is not.  Under the plain language of Code § 18.2-308.2(A), a violation of that statute is complete upon possession of a firearm by any person previously convicted of any felony.  Proof that the prior felony conviction was for a "violent felony" as designated under Code § 17.1-805 invokes the applicability of the enhanced punishment provision in Code § 18.2-308.2(A).

In the context of determining whether an amendment to a warrant so as to subject the defendant to the possibility of the greater mandatory minimum sentence under Code § 18.2-308(A)(2) constitutes a change in the "nature or character" of the charged offense, we are of opinion that such an amendment impacts only the degree of the authorized punishment.  With regard to amendment of indictments, we have stated "the bare fact that the

15

amendment allowed authorizes a greater punishment than that authorized for the offense charged in the original indictment does not of itself change the character of the offense charged." Sullivan, 157 Va. at 877, 161 S.E. at 300. We find the same reasoning to apply in the context of amendment to warrants. Therefore, an amendment to a warrant charging an accused with possession of a firearm after conviction of a felony that merely changes whether the prior felony was or was not a violent felony under Code § 17.1-805 does not impermissibly change the nature or character of the offense charged.

Here, the original warrant clearly provided that the charged offense was possession of a firearm by a convicted felon under Code § 18.2-308.2(A), and the amendment merely changed the warrant to charge that Rawls' prior felony was a violent felony as defined by Code § 17.2-805. Accordingly, since the amendment did not change the nature or character of the offense charged, we hold that the Court of Appeals correctly determined that the trial court did not err in allowing the trial to proceed on the amended warrant.[10]

In his third assignment of error, Rawls contends that the Commonwealth's evidence was insufficient to support his conviction under Code § 18.2-308.2(A). Under well-established

_____

[10] Rawls does not claim that he was prejudiced in his defense due to any surprise caused by the amendment and, thus, we do not address the issue. In any case, Code § 19.2-231 states that the remedy for such surprise is a continuance. Here, the

16

principles, when determining the sufficiency of the evidence to support a conviction we review the evidence in the light most favorable to the Commonwealth, the prevailing party at trial. Zimmerman v. Commonwealth, 266 Va. 384, 386, 585 S.E.2d 538, 539 (2003). We will reverse a trial court's ruling upholding a jury's verdict only when the ruling is plainly wrong or without evidence to support it. Code § 8.01-680; Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005).

Rawls does not dispute that he was previously convicted of a "violent felony," and challenges only the sufficiency of the evidence to prove beyond a reasonable doubt that he possessed the firearm in question. A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession. Evidence of actual possession is not necessary. Walton v. Commonwealth, 255 Va. 422, 425-26, 497 S.E.2d 869, 871 (1998). To establish constructive possession of the firearm by the defendant, the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control. Id.; Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986); Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984); Andrews v. Commonwealth, 216 Va. 179, 182, 217 S.E.2d

_____

trial court offered Rawls a continuance, but he declined.

17

812, 814 (1975). While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm or ownership or occupancy of the premises where the firearm is found, these are circumstances probative of possession and may be considered as factors in determining whether the defendant possessed the firearm. Walton, 255 Va. at 426, 497 S.E.2d at 871-72; Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983); Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982). Furthermore, the Commonwealth does not have to prove that possession was exclusive. See Eckhart v. Commonwealth, 222 Va. 447, 450, 281 S.E.2d 853, 855 (1981); Ritter v. Commonwealth, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970).

The evidence showed that when police arrived at his residence, Rawls was alone in the bedroom in which the firearm was found. The bedroom door was closed, and Rawls appeared to have been sleeping on the mattress under which the firearm was found. The bedroom contained Rawls' clothes and personal effects; no other person's belongings were found in the room. Furthermore, Rawls' roommates testified that the bedroom belonged to Rawls. These facts clearly demonstrate that the firearm was within Rawls' dominion and control and are probative of his awareness of the presence of the firearm in the room.

Rawls' conduct when confronted by police further suggests his possession of the firearm. When police told Rawls they were

there to serve him with an arrest warrant for a probation violation, Rawls immediately disclaimed ownership of the room. Based on the substantial evidence that the room in fact did belong to Rawls, the jury could have concluded that Rawls was lying to conceal his guilt. See Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004). This is precisely the kind of act, statement, or conduct that tends to prove the defendant's knowledge of the presence and character of contraband. See Lane, 223 Va. at 716-17, 292 S.E.2d at 360.

Rawls contends that his roommates' testimony showed that other individuals had unrestricted access to the bedroom and, thus, increased the likelihood that someone other than Rawls put the firearm under the mattress. However, even assuming that the jury believed that other individuals had access to Rawls' room, such access is only a single factor to be considered among all of the circumstances. The Commonwealth was not required to prove that Rawls had exclusive access to the bedroom. Rather, by demonstrating Rawls' presence in his own bedroom and the presence of the firearm at the time, along with the other circumstances suggesting his possession of the firearm, the Commonwealth's evidence was sufficient to support the jury's conclusion that Rawls possessed the firearm.

For these reasons, we hold that the evidence was sufficient to establish that Rawls possessed the firearm. Since Rawls does not dispute that he was previously convicted of a violent felony,

19

we further hold that the jury verdict convicting Rawls of possession of a firearm by a convicted felon under Code § 18.2-308.2(A) as charged in the amended warrant was not plainly wrong or without evidence to support it.

In his fourth assignment of error, Rawls contends that the trial court erred by refusing to declare a mistrial when the jury initially returned a verdict for a ten-year sentence despite being instructed that the mandatory sentence was five years. Rawls claims that the initial verdict for a sentence that was twice the maximum permissible sentence demonstrated the jury's prejudice and inability to follow the court's instructions.  We disagree.

As the Court of Appeals noted, generally when the trial court imposes a sentence that does not exceed the maximum sentence allowed by statute, the sentence will not be overturned on appeal as an abuse of discretion.  Williams v. Commonwealth, 270 Va. 580, 584, 621 S.E.2d 98, 100 (2005), Abdo v. Commonwealth, 218 Va. 473, 479, 237 S.E.2d 900, 903 (1977). Here, although the jury initially returned a verdict for a ten-year sentence, the trial court ultimately imposed the mandatory five-year sentence in accord with the jury's subsequent verdict.  Since this sentence was not only permitted, but required by statute, there was no abuse of discretion.

Furthermore, we find no support in the record for the assertion that the jury's initial rendering of a verdict for a

ten-year sentence demonstrated that the jury was prejudiced or unable to follow instructions.  While we cannot determine the reason for the jury's apparent misunderstanding of the instructions regarding the mandatory sentence, there is simply no evidence that it was anything other than an isolated mistake.[11] Under the circumstances, we hold that the Court of Appeals' conclusion that the trial court did not err in refusing to grant a mistrial was correct.

CONCLUSION

For these reasons, we will affirm the judgment of the Court of Appeals denying Rawls' petition for appeal.

Affirmed.

---

[11] The trial court stated that the jury may have misinterpreted a jury instruction stating, in part, that "you should impose such punishment as you feel is just under the evidence" as giving it discretion in imposing a sentence.  We do not adopt or reject this conclusion, but note that it does, if true, provide a plausible explanation for the jury's confusion.