COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Petty and Beales
Argued at Richmond, Virginia


STEVEN PREVONCE LAMB

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2832-09-1                      JUDGE RANDOLPH A. BEALES
                                                       FEBRUARY 8, 2011

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                         Frederick H. Creekmore, Judge

            James O. Broccoletti (Zoby & Broccoletti, P.C., on brief), for
            appellant.

            Craig W. Stallard, Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


       Steven Prevonce Lamb (appellant) challenges the sufficiency of the evidence supporting his

conviction for possession of a firearm by a convicted felon, a violation of Code § 18.2-308.2(A)(i).

Specifically, appellant contends the trial court erred in finding that he constructively possessed the

firearm that was found in the vehicle that appellant was driving.  Given the standard of review in

this case, we find that a rational factfinder could conclude that the evidence was sufficient to prove

beyond a reasonable doubt that appellant was guilty of possession of the firearm.  Therefore, we

affirm his conviction.

                                      Standard of Review

       When the sufficiency of the evidence supporting a conviction is challenged on appeal, we

must affirm the trial court's judgment if "'any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.'"  Kelly v. Commonwealth, 41 Va. App. 250,

_____
       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "'The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Wilkins v. Commonwealth, 18 Va. App. 293, 295, 443 S.E.2d 440, 442 (1994) (*en banc*) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). In such cases, this Court views the evidence in the light most favorable to the party who prevailed before the trial court, here, the Commonwealth. Dunbar v. Commonwealth, 29 Va. App. 387, 393, 512 S.E.2d 823, 826 (1999). We "must discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom." Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Analysis

"A conviction for knowingly and intentionally possessing a firearm after having been convicted of a felony, see Code § 18.2-308.2, requires proof beyond a reasonable doubt of either actual or constructive possession of the firearm." Hancock v. Commonwealth, 21 Va. App. 466, 468, 465 S.E.2d 138, 140 (1995); see Rawls v. Commonwealth, 272 Va. 334, 349, 634 S.E.2d 697, 705 (2006). To support a conviction based upon constructive possession, the Commonwealth "'must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting Powers v.

- 2 -

Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)).  While sufficient evidence of guilt is proven neither by mere proximity to the firearm nor by mere "occupancy of the premises" where a firearm is found, both proximity and occupancy are relevant factors that a factfinder can consider in determining guilt.  Rawls, 272 Va. at 350, 634 S.E.2d at 705.

"[W]here, as here, a conviction is based on circumstantial evidence, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'"  Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983) (quoting Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982)).  However, "[m]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded.  What weight should be given evidence is a matter for the [factfinder] to decide."  Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964).  "The Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the [contraband]."  Brown v. Commonwealth, 15 Va. App. 1, 10, 421 S.E.2d 877, 883 (1992).  Rather, the evidence must support a finding that the accused "had actual knowledge" that the firearm was present, Hancock, 21 Va. App. at 469, 465 S.E.2d at 140, and that the accused had sufficient access to the firearm to bring it under his dominion and control, Smallwood v. Commonwealth, 278 Va. 625, 631, 688 S.E.2d 154, 157 (2009).

Here, Officer Michael Cusumano stopped appellant because he was driving a car with a malfunctioning rear tag light, and appellant provided his driver's license, but claimed that he could not find his registration.  Because the officer had smelled marijuana while talking with appellant, the officer asked appellant to get out of the car.  The officer turned appellant over to Officer Spruill and then returned to appellant's car to search it.  Officer Cusumano opened the

driver's side door. He testified that he "immediately looked down" towards the floorboard and saw "the black grip of a pistol sticking out from underneath the front driver's seat" while he was standing beside the car. The barrel of the gun was pointed toward the back seat. At trial, the officer demonstrated for the trial court how the nine-millimeter firearm was lying on the floorboard. Officer Cusumano did not see the gun while appellant was in the car because the officer was more concerned about watching appellant's hands than about looking at the floorboard, and because the gun's position was apparently underneath appellant's legs as he sat in the driver's seat. Appellant – the only person in the car – was arrested after the officer saw the gun. Officer Cusumano later discovered that the firearm had been stolen a year earlier from its owner in Norfolk.

After his arrest, appellant told the officer that the vehicle belonged to his cousin, but Officer Cusumano was never able to confirm that assertion. In fact, his inquiries at the Department of Motor Vehicles indicated that the car belonged either to a dealership or to someone other than appellant's cousin. The officer was "unable to get" any information about his cousin from appellant, who claimed that he did not know his cousin's address or phone number. Appellant also told the officer that he did not know that the gun was there.

In this case, the firearm was clearly visible to anyone opening the driver's side door.[1] See Redmond v. Commonwealth, 57 Va. App. 254, 266, 701 S.E.2d 81, 87 (2010) (noting that,

---

[1] Because the trial court had an opportunity to observe the officer's demonstration of the placement of the gun, and the record does not include any videotape of that demonstration, we are particularly mindful that our standard of review requires deference to the factfinder who had the opportunity to see and review all the evidence here. See James v. Commonwealth, 53 Va. App. 671, 677, 674 S.E.2d 571, 574 (2009) ("Faced with a challenge to the sufficiency of the evidence, 'we must give trial courts and juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them. The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them.'" (quoting Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955))).

"[j]ust as [Officers] Flagg and Clutz could observe the firearms in plain sight during their walk-through of the house, so could appellant."). In addition, the firearm was within appellant's easy reach, with the grip of the gun easily accessible to him as he sat in the car.

Although appellant claims that someone else could have left the gun under the seat, the evidence in this record does not indicate that anyone else had access to the gun to the exclusion of appellant. See Smallwood, 278 Va. at 631-32, 688 S.E.2d at 157 (discussing joint possession of a firearm). Appellant's contention that he got the car from his cousin is not supported by the evidence, especially as Officer Cusumano's inquiries at DMV were not able to confirm that his cousin ever owned the car. In addition, there is no evidence in this record that appellant slammed on his brakes when stopped by the officer, which might have caused the gun to move forward from an obscured position under the seat. Therefore, the totality of the circumstantial evidence in this case supports the trial court's finding that appellant knew that the firearm was present and that he had sufficient access to the firearm to bring it under his dominion and control.

Appellant contends that Coward v. Commonwealth, 48 Va. App. 653, 659, 633 S.E.2d 752, 754 (2006), where we reversed a conviction for cocaine possession, should control here. However, in that case the Commonwealth was required to prove that Coward knew the small item in the clear plastic baggie on the car's console was cocaine, but the evidence did not prove that Coward was familiar with cocaine. Id. at 659-60, 633 S.E.2d at 754-55. In other words, the Commonwealth did not prove Coward was aware of the nature of the substance in the baggie. Here, in contrast, the nature of the item under the seat (i.e., that it was a firearm) was not in question. The item that was visible upon entering the vehicle was obviously a grip to a firearm. Appellant had prior convictions for possessing a concealed weapon, so he clearly could not argue, and did not argue, that he was not familiar with firearms.

In addition, appellant made statements to the officer contending that the car did not belong to him – statements made only after the firearm was discovered – clearly attempting to conceal his connection to the weapon. In contrast, Coward neither did nor said anything suspicious either before or after the cocaine was discovered. Also, Coward was not in control of the car in which the officer observed the cocaine. Instead, he was a passenger in a car that actually belonged to the driver's mother. Id. at 656, 633 S.E.2d at 753. Here, in contrast, when Officer Cusumano stopped the car, appellant was in absolute control of the vehicle. He was the driver and the only person in the car. Overall, although appellant claims this Court's decision in Coward is controlling, that case presented a very different set of facts from those in the case before us here.[2]

Appellant also argues that Hancock, 21 Va. App. at 472, 465 S.E.2d at 141, in which we reversed a conviction for possession of a firearm by a convicted felon, applies here. There, as was the situation with the defendant in Coward, Hancock made no statements that created any suspicion. Id. at 468, 465 S.E.2d at 139-40. However, in this case, appellant did make statements that were highly suspicious.[3] In addition, unlike the facts here, Hancock was one of five people in a car, and he was not driving. Id. Here, appellant had absolute control of the car in which the firearm was found. Also, in contrast to the case before us, the trial court in Hancock

---

[2] Appellant also discusses Jones v. Commonwealth, 17 Va. App. 572, 439 S.E.2d 863 (1994), which is similar to Coward in that Jones was charged with possession of drugs (not a firearm), was not the only person in the car, and made no suspicious movements or statements. Thus, for the same reasons discussed *supra*, we also find that Jones is very different from the facts here.

[3] Appellant's statement to Officer Cusumano was partially true – i.e., in that appellant did not own the vehicle. However, appellant also claimed that his cousin, whom appellant indicated he did not know how to reach, owned the car. "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), the DMV records simply did not support appellant's claim.

was not presented with a demonstration of the placement of the firearm. Based on that demonstration and on the officer's testimony that the gun was obviously visible when a person opened the driver's side door (as long as no one was sitting in the driver's seat), the trial court could reasonably infer that appellant saw the gun and knew it was there when he opened that door to get into the driver's seat and drive the car.

For all the foregoing reasons, we find the trial court did not err in convicting appellant.

## Conclusion

Based on the evidence adduced at trial, a rational factfinder could conclude that appellant had knowledge of the presence of the firearm situated underneath the driver's seat and that the gun was subject to his dominion and control. Therefore, we affirm appellant's conviction for possession of a firearm by a convicted felon.

<u>Affirmed.</u>

Elder, J., dissenting.

The majority holds "a rational factfinder could conclude that appellant had knowledge of the presence of the firearm situated underneath the driver's seat and that the gun was subject to his dominion and control." Although I agree the evidence establishes appellant could have exercised dominion and control over the firearm based on his proximity to it in this admittedly close case, the record fails to support a finding that he "had actual knowledge" of the firearm's presence in the vehicle. Hancock v. Commonwealth, 21 Va. App. 466, 469, 465 S.E.2d 138, 140 (1995). Because the evidence is insufficient as a matter of law to support a conviction for possession of a firearm by a convicted felon without proof "'that the defendant was aware of both the presence and character of the [item] *and* that it was subject to his dominion and control,'" Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (emphasis added) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)), I respectfully dissent.

When addressing an accused's challenge to the sufficiency of the evidence, we must, as the majority rightly asserts, "discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom." Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993). However, the rejection of conflicting evidence does not support a rejection of reasonable hypotheses of innocence where the evidence does not disprove them. In other words, if, after consideration of all of the incriminating evidence supporting a conviction, a reasonable hypothesis of innocence still exists, we must reverse. It is here where I believe the majority errs by rejecting the hypothesis that appellant operated the vehicle without knowing a partially obscured firearm lay underneath the driver's seat. The evidence does not prove appellant's hypothesis of innocence, but it also does not affirmatively disprove that hypothesis.

- 8 -

In Hancock, a decision that I believe controls the present case, we reversed the defendant's conviction for possession of a firearm by a convicted felon because "[n]o evidence established that Hancock ever held the firearm, saw it, knew it was present or exercised any dominion and control over it." 21 Va. App. at 472, 465 S.E.2d at 141. There, an officer responded to a citizen's complaint that shots had been fired from a vehicle. Upon finding the vehicle that matched the description in the dispatch, the officer requested each of the five occupants to exit the vehicle one at a time. As the defendant picked his feet up to exit the vehicle, the officer observed a revolver on the floorboard under the driver's seat. The officer testified "he could not see the firearm until Hancock 'stepped out [because] his feet were on top of it.'" Id. at 468, 465 S.E.2d at 139. Because these "facts established no more than a mere suspicion that the firearm was possessed by Hancock or that he knew the firearm was under the driver's seat," we reversed his conviction. Id. at 472, 465 S.E.2d at 141.

The key justification for reversing the conviction in Hancock was that "[n]o evidence proved that Hancock could see the firearm."[4] Id. Similarly, no evidence in this case proved that appellant could see the firearm as he entered the vehicle. The majority assumes that because Officer Cusumano observed the grip of the firearm, "the firearm was clearly visible to anyone opening the driver's side door."[5] However, the evidence in the record establishes that Cusumano

---

[4] Although Hancock mentions other pieces of evidence that distinguish it from the case at hand—namely, the presence of four additional occupants of the vehicle compared to appellant's sole occupancy of the vehicle—these facts were not the focus of the decision. Instead, both this case and Hancock revolve around the location of the firearm and its relative obscurity from view. In any event, because contraband can be possessed jointly, a defendant may know of the presence of contraband when he is the only one in the area or when multiple people are nearby.

[5] The facts in Redmond v. Commonwealth, 57 Va. App. 254, 701 S.E.2d 81 (2010), upon which the majority cites, contrast significantly with this case. In that case, the officers received information that the defendant was in illegal possession of firearms. To verify this information, the officers scheduled a tour of the defendant's residence with a real estate agent, as the house had been listed on the market. During the walkthrough, the officers observed "a wooden gun cabinet with glass panels," where "[s]everal long guns were visible in the case." Id. at 256, 701

failed to notice its presence until after appellant had exited the vehicle. Like the majority, I do not fault Cusumano for being "more concerned about watching appellant's hands than about looking at the floorboard." However, it is equally likely that appellant was also distracted when he entered the vehicle. It does not strain the imagination to believe a person who enters a vehicle does not automatically search the floorboard for contraband. Indeed, only by scrutinizing the floorboard after appellant had been detained outside the vehicle did Cusumano discover the firearm. Cusumano did not testify that he saw appellant look at the floorboard, make any furtive gestures, or conduct an investigation of the floorboard similar to Cusumano's investigation that led to the firearm's discovery. See Coward v. Commonwealth, 48 Va. App. 653, 660, 633 S.E.2d 752, 755 (2006) (noting that although the officer was able to see the contraband with illumination from his flashlight, "there was no evidence that the baggie would have been visible in the darkness of the passenger compartment without such additional lighting"); Hancock, 21 Va. App. at 472, 465 S.E.2d at 141 (noting "no evidence proved that Hancock could see the firearm" because "the officer testified that he could not see the firearm on the floor when the passengers were in the vehicle"). Moreover, the firearm did not contain appellant's fingerprints. E.g., Hancock, 21 Va. App. at 470, 465 S.E.2d at 140. Because such evidence is lacking in this record, a reasonable hypothesis of innocence flowing from the evidence is that appellant had no knowledge of the firearm's presence when he entered and operated the vehicle.

Of course, an accused's statements can establish the requisite awareness of the character and nature of the contraband. See Smallwood v. Commonwealth, 278 Va. 625, 628, 631, 688

_____

S.E.2d at 82. We discounted the defendant's argument that he did not know of the presence, nature, and character of the guns found on the premises because "[j]ust as [the officers] could observe the firearms in *plain sight* during their walk-through of the house, so could [the defendant]." Id. at 266, 701 S.E.2d at 87 (emphasis added). In that context, the officers observed the firearms in a receptacle designed to showcase its contents and draw the casual observer's eye. It is a stretch to extend that rationale to the present case where the firearm was underneath the driver's seat such that only the grip was visible.

S.E.2d 154, 155, 157 (2009) (observing the defendant's "own statements establish[ed] that he was aware of the presence and character of the firearm" when he admitted to the arresting officer that "he thought it was fine [to be near the firearm] as long as [the firearm's true owner] was in the car"). It is in that respect that the majority attempts to distinguish Hancock by asserting that appellant made "highly suspicious" statements linking him to the firearm, referring to appellant's denial of ownership of the vehicle. However, this denial does not constitute a "'statement . . . proving that [appellant] was aware of the presence and character of the firearm.'" Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008) (quoting Rawls v. Commonwealth, 272 Va. 334, 349, 634 S.E.2d 697, 705 (2006)). By denying ownership of the vehicle, appellant made no *affirmative* statement concerning the firearm. See Smallwood, 278 Va. at 628, 688 S.E.2d at 155. Remarkably, the majority finds appellant's statements to be suspicious and indicative of guilty knowledge despite the fact he told Cusumano the truth: the vehicle did not actually belong to appellant.[6] The record sheds no light on the connection between appellant and the vehicle's true owner, and I find no insidious inference that disproves appellant's reasonable hypothesis of innocence. See Hancock, 21 Va. App. at 470, 465 S.E.2d at 141 ("[C]ircumstantial evidence requires *the Commonwealth* to exclude every reasonable hypothesis of innocence." (emphasis added)). In fairness to the majority, appellant gave

---

[6] It would therefore appear that a defendant evinces guilty knowledge where he admits to ownership, e.g., Smallwood, 278 Va. at 628, 688 S.E.2d at 155, denies ownership, e.g., supra at 4-5, or says nothing at all, cf. Scott v. Commonwealth, 55 Va. App. 166, 174, 684 S.E.2d 833, 838 (2009) (noting that when considering whether the defendant possessed multiple types of drugs with intent to distribute, his "assertion that he uses one type of drug, contrasted with his silence regarding the use of the other type 'undermine[d] [the defendant]'s argument that personal use is the only reasonable hypothesis of possession'" (quoting Harper v. Commonwealth, 49 Va. App. 517, 522, 642 S.E.2d 779, 781 (2007))). See generally United States v. Broomfield, 417 F.3d 654, 655 (7th Cir. 2005) (Posner, J.) ("Whether you stand still or move, drive above, below, or at the speed limit, you will be described by the police as acting suspiciously should they wish to stop or arrest you. Such subjective, promiscuous appeals to an ineffable intuition should not be credited.").

Cusumano vague answers regarding a cousin who may or may not have existed. The majority suggests that because the DMV records did not support this claim, appellant somehow evinced guilty knowledge of the firearm. However, at the time of appellant's arrest, the title search traced the ownership to a dealership; the officers did not learn of the identity of the vehicle's true owner until appellant's trial approximately four months later. In other words, the officers had no evidence to disprove what appellant told them at the time of his arrest. Without more, appellant's lack of forthrightness does not exclude the reasonable hypothesis that he did not know of the presence of the partially obscured firearm. See Tarpley v. Commonwealth, 261 Va. 251, 257, 542 S.E.2d 761, 764 (2001) ("[T]he trial court's rejection of [an accused's] testimony does not provide a factual basis for establishing [an element of a crime] beyond a reasonable doubt.").

In this close case, I do not believe the evidence disproves all reasonable hypotheses of innocence. Far too many holes exist in the record regarding whether appellant had actual knowledge of the firearm's presence in the vehicle he was operating. Cusumano did not see the firearm until after he focused on the floorboard, and it is reasonable to believe appellant likewise did not scrutinize the vehicle when he first entered it. Further, appellant made no furtive gestures towards the firearm after Cusumano pulled his vehicle over, and appellant's fingerprints were not found on the firearm. Without more, we are left to speculate as to whether appellant knew the firearm was underneath his seat. Thus, I respectfully dissent from the majority's affirmance of appellant's conviction.