UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Raphael and Callins
Argued by videoconference

CHRISTOPHER NOLAN VINES

                                               MEMORANDUM OPINION[*] BY
v.       Record No. 0576-21-1                  JUDGE STUART A. RAPHAEL
                                               FEBRUARY 15, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Michael E. McGinty, Judge

Robert Bruce Jones for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.

In appealing his conviction for possession of a firearm by a violent felon, Christopher

Nolan Vines does not question his violent-felon status. He argues instead that the prosecution

failed to prove that he was aware of the 9-mm handgun that was found sitting on his bedroom

floor, in plain view, two to three feet from his bed. Because a reasonable trier of fact could find

the evidence sufficient to prove his guilt beyond a reasonable doubt, we affirm the conviction.

## I. BACKGROUND

As Vines challenges the sufficiency of the evidence supporting his conviction following a

trial on the merits, we are required to "review the evidence in the 'light most favorable' to the

Commonwealth, the prevailing party in the trial court." *Commonwealth v. Cady*, ___ Va. ___,

___ (Oct. 28, 2021). That means we must "discard the evidence of the accused in conflict with

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id.* (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)). We recite the facts in that light.

Vines was previously convicted of statutory burglary under Code § 18.2-91, a "violent felony" under Code § 17.1-805(C). Code § 18.2-308.2 makes it a crime for "any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm." And a person violating that section "who was previously convicted of a violent felony as defined in § 17.1-805" must be "sentenced to a mandatory minimum term of imprisonment of five years." *Id.*

On October 10, 2020, three officers from the James City County Police Department— Officers Sutton, Dykstra, and Bae—arrived at the residence where Vines lived with Juanita Walker, the mother of their children. The police were responding to a report about an incident involving the brandishing of a firearm and a potential assault by Vines on Walker. Officer Sutton spoke with Walker outside the residence, and Walker consented to their searching the premises.

After knocking several times without a response, the officers entered the residence through the garage. A hallway extended from the common area to the bedrooms. Looking down the hallway from the common area, Vines and Walker shared the bedroom to the right, where the gun was found. Vines's daughter used the bedroom to the left.

After the officers loudly announced themselves several times, Officer Dykstra saw Vines exit from his bedroom—the one on the right—before joining them in the common area. Vines at first claimed that he had been "regularly" sleeping in his daughter's bedroom—the one on the left—but later admitted "that he stayed in the back right bedroom with" Walker, whom he called his "girlfriend." Walker confirmed at trial that they were "sharing that bedroom," that the bed in

that room was theirs ("our bed"), that Vines had come home around 2:00 a.m. and gone to sleep in that bedroom later that morning, after she had gotten up, and that he remained in that bedroom all day until she awakened him around dinnertime.

In response to questions from Officer Bae, Vines said that he'd had an argument with Walker about "money issues and their kids" but denied any "physical altercation." Vines also denied possessing any weapons and denied that a weapon was present in the home. The officers detained Vines while Officer Sutton, followed by Walker, searched for the reported weapon.

Officer Sutton described Vines's bedroom as the "master bedroom," measuring about "13 by 13" feet. A person standing in front of the dresser could sit down on the bed. The dresser was to the left of the door. When Sutton entered the room, she noticed a box of 9-mm ammunition sitting on top of the dresser. The ammunition box was "in plain view." Sutton's photograph of the box was entered into evidence as Commonwealth's Exhibit 2. The box of ammunition was sitting on top of some papers that Vines, according to Walker, had "probably" placed there. Sutton noticed various "UFC" competitive-fighting paraphernalia and figurines. She opened several drawers, finding men's underwear and swimsuits inside.

Looking down, Sutton noticed a 9-mm pistol sitting on the floor, next to a basket by the dresser, about two to three feet from the bed. Nothing was covering the gun; it was in "plain view" and could be seen from the bed. Before picking up the gun, Sutton took a photograph that was introduced into evidence as Commonwealth's Exhibit 3. Inspecting the weapon, Sutton removed a bullet from the chamber to render it safe.

Vines was arrested and held without bond, and the grand jury subsequently indicted him under Code § 18.2-308.2 for "knowingly and intentionally" possessing a firearm after being convicted of a violent felony.

While in jail awaiting trial, Vines and a friend participated in a video call with Walker. The video call was recorded and introduced into evidence. When Walker mentioned her upcoming testimony, Vines and his friend discussed something *sotto voce*. Vines can be heard asking "can they?"; the friend says, "if they wanted to"; Vines responds, "so they're not right now?"; and his friend answers, "no, I don't think so." The trial judge understood that exchange to reflect an incorrect assumption that jail officials were not monitoring the call. Walker then recounted what she planned to say: she "had somebody over"; "when he got undressed he put the gun in the basket . . . and forgot to get it." Vines tried to interrupt, "But it was on the floor," and again, "it was on the floor." But Walker repeated, "It was in the basket, because he put it there, you know what I mean?" "Okay?," she asked Vines. Vines replied, "That's fine, whatever you gotta do, I appreciate it." He told her, "I'll look out for you when I get out, somehow."

Later that evening, Vines also discussed the incident with an acquaintance in a telephone call that the jail likewise recorded. Vines admitted in that call to having brandished a firearm:

> I found the pistol, and I put it in the air, and I was like "what the f---?" and the next thing I knew, everybody left out of the f---ing house. And I went into the back room and passed out on the bed with my shoes on. And the police come in there, flashing flashlights, and saying "Mr. Vines, you're not in any trouble; we just want to talk to you." So I'm like, what? . . . Soon as they grab my arms, I'm like m-----f-----, I'm going to jail.

As Vines's counsel conceded at oral argument, the details in that call fit the incident here.

At trial, the Commonwealth presented the facts set forth above and the court denied Vines's motion to strike. Vines then called Walker to testify in his defense. Consistent with the preview she had given Vines in the video call, Walker said that a few people had stopped by their house the night before, when Vines was not home, including a friend of Vines named "Dean," whose real name she later learned was "Josh or something." Walker said that, because Vines had cheated on her and she wanted to get even, she had sex in their bed with the friend.

- 4 -

As "Dean" was getting undressed, she said he put the gun in the basket by the dresser, and then he forgot to take it when he left. Walker said she hadn't noticed the bullets on the dresser. Then Vines arrived early in the morning and later went to bed in that room.

Describing the search, Walker claimed that Officer Sutton pulled the bag out of the basket and found the gun underneath. Walker insisted that if the gun had been on the floor in plain view, Sutton would not have first had to look through the drawers to find it. Although Walker said she wasn't comfortable having a gun in the house, she said she forgot about it after Dean left. Walker confirmed, however, that she shared the bedroom with Vines and that the bed was theirs.

Although Walker testified that she had not told Vines what she had planned to say at trial, the prosecution played the video call where Walker had previewed her testimony for him. And in response to Walker's insistence that the gun was in the basket underneath a bag, the prosecution played the footage from Officer Sutton's body camera, which corroborated Sutton's description of finding and photographing the gun on the floor, not in the basket.

The trial court found Vines guilty beyond a reasonable doubt of possession of a firearm by a violent felon. Vines was sentenced to five years in the penitentiary, the mandatory minimum under Code § 18.2-308.2, and another six months of confinement, with six months suspended during post-release supervision.

## II. ANALYSIS

Vines assigns error to the trial court's finding that the evidence sufficed to show that he "knowingly and intelligently" possessed the firearm. The trial court's judgment is "presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). Viewed from this "vantage point," the question is not whether *this* Court "believes that the evidence at the trial

established guilt beyond a reasonable doubt." *Cady*, ___ Va. at ___ (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "Instead, the only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at ___ (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). Those principles apply "to bench trials no differently than to jury trials." *Pijor*, 294 Va. at 512 (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 249 (2016)).

"A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession. Evidence of actual possession is not necessary." *Rawls v. Commonwealth*, 272 Va. 334, 349 (2006). "To establish constructive possession," the Commonwealth had to "present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." *Id.* Possession "may be joint" and "need not always be exclusive. The defendant may share [the weapon] with" others. *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 741 (1970)); *Hall v. Commonwealth*, 69 Va. App. 437, 449 n.6 (2018) (same).

We find that the Commonwealth adduced sufficient evidence to enable a rational factfinder to conclude that Vines was aware of the gun and that the gun was within his dominion and control. Vines admitted in the recorded telephone call that he "found the pistol" and "put it in the air." As his counsel recognized at oral argument, the details Vines described in that call matched the details of the incident here. Vines's admission of brandishing is evidence of actual possession of the firearm.

The evidence also sufficed to support a finding of constructive possession. After all, Vines "was an occupant of the bedroom where the firearm was found in plain view." *Hall*, 69 Va. App. at 449. After the police entered the residence and announced their presence, Officer Dykstra saw Vines emerge from that bedroom. Although Vines first claimed he was staying in the other bedroom, he later admitted that he stayed with Walker in the room where the gun was found. Walker confirmed in her testimony that she and Vines lived together and shared that bedroom. She described the bed as "our bed." She also said that Vines had gone to sleep in that bed the morning of the incident. Officer Sutton testified that the loaded gun that she found on the floor was in plain view, only two to three feet from the bed. Although Walker insisted that Sutton found the gun in the basket, covered by a bag, Walker's version of events was discredited by the body-camera footage showing Officer Sutton finding the gun on the floor. The ammunition box on top of the dresser was also "in plain view," containing 9-mm bullets matching the caliber of the pistol. That box was resting on papers that Walker said Vines had "probably" put there.

"While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm, it is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). As in *Bolden*, the inference of possession from proximity is especially strong here because the gun was "open and obvious," "located in immediate proximity" to the bed, easily within Vines's reach. *Id.* at 149.

And finally, a reasonable factfinder could find evidence of guilt in the fact that Vines at first lied to the police when he told them that he had been sleeping in his daughter's room, not the master bedroom where the gun was located. When, as here, the "defendant's denial of circumstances relating to an illegal act is inconsistent with [the] facts, it is fair to infer that such

denial was for the purposes of concealing guilt." *Cordon v. Commonwealth*, 280 Va. 691, 695 (2010). A "false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge." *Id.* (quoting *Covil v. Commonwealth*, 268 Va. 692, 696 (2004)).

The Commonwealth's evidence here presents an even stronger basis for upholding the conviction than in *Rawls*. 272 Va. at 351. Like Vines, Rawls was in his bedroom when the police arrived, but the gun there was concealed "between the mattress and box spring." *Id.* at 342. Rawls denied that the bedroom was his and "introduced evidence to establish that numerous individuals had access to the bedroom." *Id.* Rawls's witnesses "indicated that although the bedroom belonged to Rawls, the roommates and their friends occasionally used the bedroom to watch television or to sleep. According to the roommates, the front door and bedroom doors of the home were always unlocked." *Id.* Even so, the Court found the evidence sufficient to support the conviction. "The Commonwealth was not required to prove that Rawls had exclusive access to the bedroom." *Id.* at 350. "Rather, by demonstrating Rawls'[s] presence in his own bedroom and the presence of the firearm at the time, along with the other circumstances suggesting his possession of the firearm, the Commonwealth's evidence was sufficient to support the jury's conclusion that Rawls possessed the firearm." *Id.* at 350-51. There was even stronger evidence in this case. The gun was in plain view from Vines's bed—not hidden under the mattress. Vines finally acknowledged—and Walker's testimony confirmed—that the bedroom was his and that he had been present in the bedroom. And Vines admitted in the recorded telephone call to having "found" and brandished the "pistol."

CONCLUSION

The trial court did not err in convicting Vines of violating Code § 18.2-308.2 because a reasonable trier of fact considering the Commonwealth's evidence could find Vines guilty beyond a reasonable doubt of possessing the 9-mm handgun.

*Affirmed.*