# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **24th** *day of* **March, 2020**.

Lucan Sheldon Lightfoot,                                                                                    Appellant,

against          Record No. 1469-18-4
                 Circuit Court Nos. CR17000424-01 and CR17000424-02

Commonwealth of Virginia,                                                                              Appellee.


Upon a Rehearing En Banc

Before Chief Judge Decker, Judges Humphreys, Petty, Beales,
Huff, O'Brien, Russell, AtLee, Malveaux and Athey

Hannon E. Wright (Rakness & Wright, PLC, on brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


By memorandum opinion dated December 10, 2019, a panel of this Court affirmed the convictions of Lucan Sheldon Lightfoot, for two violations of Code § 18.2-308.2.  Specifically, he was found guilty of being in possession of a firearm and ammunition, respectively, after having been convicted of a felony.  We granted rehearing *en banc* and stayed the mandate of that decision.

Upon rehearing *en banc*, the stay of this Court's December 10, 2019 mandate is lifted, and we affirm the aforesaid convictions for the reasons set forth in the panel opinion.

Judges Humphreys and Huff dissent for the reasons set forth in the panel dissent.

It is ordered that the trial court allow counsel for the appellant an additional fee of $200 for services rendered the appellant on the rehearing portion of this appeal, in addition to counsel's costs and necessary

direct out-of-pocket expenses. This amount shall be added to the costs due the Commonwealth in the

December 10, 2019 mandate.

This order shall be certified to the trial court.

A Copy,
Teste:
Cynthia L. McCoy, Clerk
*original order signed by a deputy clerk of the*
By: *Court of Appeals of Virginia at the direction*
*of the Court*
Deputy Clerk

UNPUBLISHED

*VIRGINIA:*

In the Court of Appeals of Virginia on **Tuesday** *the* **7th** *day of* **January, 2020**.

Lucan Sheldon Lightfoot, Appellant,

against Record No. 1469-18-4
Circuit Court Nos. CR17000424-01 and CR17000424-02

Commonwealth of Virginia, Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On December 23, 2019 came the appellant, by court-appointed counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on December 10, 2019, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel. In addition, four printed copies of each brief shall be filed. It is further ordered that the appellant shall file an electronic version and four additional copies of the appendix previously filed in this case.[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

*original order signed by a deputy clerk of the*

By: *Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

Present:    Chief Judge Decker, Judges Humphreys and Russell
Argued by teleconference

LUCAN SHELDON LIGHTFOOT

MEMORANDUM OPINION[*] BY
v.       Record No. 1469-18-4          JUDGE WESLEY G. RUSSELL, JR.
                                       DECEMBER 10, 2019

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Susan L. Whitlock, Judge

Hannon E. Wright (Early, Powell, Rakness & Wright, PLC, on
brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Appellant, Lucan Sheldon Lightfoot, was convicted in a bench trial for two violations of

Code § 18.2-308.2.  Specifically, he was found guilty of being in possession of a firearm and

ammunition, respectively, after having been convicted of a violent felony.  On appeal, he challenges

the sufficiency of the evidence to support a conclusion that he possessed either a firearm or

ammunition.[1]  For the reasons that follow, we affirm the judgment of the trial court.

BACKGROUND

On August 3, 2017, appellant was the front-seat passenger in a car driven by and

registered to Amanda Braden.  When Braden failed to stop at a stop sign, Officer D.T. Adair

initiated a traffic stop.  Although Adair did not notice any furtive movements by either appellant

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] He does not contest on appeal that the evidence was sufficient to establish that he was a violent felon for the purposes of Code § 18.2-308.2.

or Braden as he approached the car, Adair observed that "they were both very nervous." Braden told Adair that she was in a hurry because she was trying to get appellant to the hospital. When Adair noted that she already had passed the hospital, Braden responded that she was nervous about appellant's cancer treatment.

Adair testified that, during his initial interaction with the occupants of the car, appellant "wouldn't look at me, and [Braden] was very nervous speaking to me." Adair believed that their conduct was "indicative of narcotic activity," so he requested that a K-9 unit come to the scene. Before the K-9 unit arrived, Adair overheard appellant tell Braden "that he was going to go to jail." Adair found the statement unusual given that, "at that point[,] there was no confirmation of any narcotics in the vehicle. It was just a stop sign violation. There was no reason to believe that anybody was going to jail at that point."

The K-9 unit, in the person of Officer David Cole and his drug dog, Jackson, arrived soon thereafter. Jackson, who is trained only for drug detection, alerted on the passenger side door.[2] Following Jackson's alert, both Braden and appellant were removed from the car. At that time, Braden stated to Adair that, "if there was anything in the vehicle that she would take the charge for it."[3] Appellant denied knowledge of anything illegal in the car. Appellant also stated that he recently had smoked marijuana.

---

[2] Cole explained that, if a recent user of marijuana touched a car door, the odor of marijuana could "transfer" to the door. Thus, Jackson properly could alert on the door without there being recoverable amounts of marijuana present.

[3] On August 6, 2018, Braden entered an Alford plea to being a felon in possession of ammunition, and the trial court found her guilty of that charge. On motion by the Commonwealth, the trial court *nolle prosequied* a charge against Braden for being a felon in possession of a firearm. We note that Braden being in possession of the firearm and the ammunition does not eliminate the possibility that appellant simultaneously possessed the items because "[p]ossession may be joint or several." Smallwood v. Commonwealth, 278 Va. 625, 631 (2009).

As a result of Jackson's alert, officers searched the car. In short order, they discovered a .38 revolver "just under the front lip of the passenger seat." Adair characterized the firearm as "not in plain view[,]" although it "wasn't concealed"; another officer noted that the firearm was found "relatively quickly[.]" Officers also located a holster fitting the revolver in the glove box, a box of .38 caliber ammunition secured in the passenger side of the trunk, and some targets on the driver's side of the trunk. No drugs were found in the car.

Braden identified the targets as hers, and stated words to the effect of "we were target practicing at my mom's." Braden, who is also a felon, had an online firearms safety course certificate under her driver's side visor and stated her mistaken belief she could lawfully possess the firearm.

Adair performed a gunshot residue kit on appellant, with negative results.[4] Appellant requested and received an order for scientific testing on the firearm. Neither appellant's DNA nor his fingerprints were recovered from the firearm.

The Commonwealth rested, and appellant presented no evidence. After arguments of counsel, the trial court found appellant guilty of both charges. It explained that it relied upon appellant's statement that he was "going to jail," the proximity of the firearm to appellant, and Braden's statement to the effect that "we were target shooting at mothers." The trial court also placed significant weight on Braden's statement that she would "take the charge" for any contraband found in the car, commenting:

> The [c]ourt also notes that even though Ms. Braden said if you find anything I will take the blame, the [c]ourt would have expected that if she was the person that actually was in possession of those items, that she would have said there is a firearm under the seat

---

[4] The Commonwealth had no objection to the certificate of analysis being entered into evidence as a defense exhibit without the analyst present to authenticate the certificate. However, the Commonwealth asked the trial court to take notice that had they required the analyst's presence, the Commonwealth would have cross-examined the analyst about various factors that would lead to a negative result, such as passage of time or washing of hands.

and a holster in the glove box and furthermore ammunition somewhere in there. If she was going to take blame if they found anything obviously she knew they were getting ready to search.

Appellant appeals, arguing that the evidence was insufficient to prove that he knowingly and intentionally possessed the firearm and ammunition.

## ANALYSIS

### I. Standard of review

"[W]hen reviewing a challenge to the sufficiency of the evidence to support a conviction, [we] consider the evidence in the light most favorable to the Commonwealth . . . , and reverse[] the judgment of the trial court only when its decision is plainly wrong or without evidence to support it." Marshall v. Commonwealth, 69 Va. App. 648, 652-53 (2019). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)). In conducting our review, we consider the totality of the evidence and may not engage in "a fragmented assessment of the record" or "scrutinize[] each piece of evidence in isolation." Commonwealth v. Moseley, 293 Va. 455, 466 (2017). Viewing the evidence as a whole as opposed to as isolated pieces will often result in a situation in which "no single piece of evidence may be sufficient, [but] the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." Id. at 463 (ellipsis in original) (quoting Muhammad v. Commonwealth, 269 Va. 451, 479 (2005)).

### II. Proving the elements of possession

Possession of a firearm or ammunition can be either actual or constructive. See Rawls v. Commonwealth, 272 Va. 334, 349 (2006); Walton v. Commonwealth, 255 Va. 422, 426 (1998).

Here, the Commonwealth proceeded on a theory that appellant constructively possessed the firearm and ammunition. Thus, the Commonwealth was required to "present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm [and ammunition] and that the firearm [and ammunition] w[ere] subject to his dominion and control." Bolden v. Commonwealth, 275 Va. 144, 148 (2008) (quoting Rawls, 272 Va. at 349).

The Commonwealth may, and often will, prove constructive possession by way of circumstantial evidence. "There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence." Muhammad, 269 Va. at 479. The Virginia Supreme Court has held that "circumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Finney v. Commonwealth, 277 Va. 83, 89 (2009) (quoting Dowden v. Commonwealth, 260 Va. 459, 468 (2000)).

When relying on circumstantial evidence, the Commonwealth must exclude reasonable theories of innocence that flow from the evidence offered; however, "[t]he statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513 (2003). "Whether an alternate hypothesis of innocence is reasonable is a question of fact[,]" and thus, a trial court's rejection of such a hypothesis binds us "on appeal unless plainly wrong." Wood v. Commonwealth, 57 Va. App. 286, 306 (2010) (quoting Emerson v. Commonwealth, 43 Va. App. 263, 277 (2004)).

### III. Potential ambiguity of "we"

Both in the trial court and on appeal, the parties reasonably focus on the effect of Braden's statement that "we" were target shooting at her mother's house. The trial court, in its role as fact

finder, interpreted this statement as meaning that Braden *and* appellant had been target shooting at Braden's mother's house, paraphrasing it as "we were target shooting at mothers."[5]  Obviously, if appellant had just finished a round of target shooting at Braden's mother's house, he necessarily possessed both a firearm and ammunition in violation of Code § 18.2-308.2.

Recognizing this, appellant offers an alternative interpretation of Braden's statement that "we" were target shooting at her mother's.  He contends that "we" in this context plausibly could refer not to Braden and *appellant*, but rather, to Braden and her *mother*.[6]

In general, it is the job of the fact finder to resolve such potential conflicts in the evidence.  However, "when the evidence is susceptible [to] two interpretations, the fact finder cannot *arbitrarily* adopt the one that incriminates the defendant."  Clanton v. Commonwealth, 53 Va. App. 561, 573 (2009) (*en banc*) (emphasis in original).  Although conceding that the trial court's interpretation of the statement is plausible, appellant argues adopting it is arbitrary because his alternative interpretation of the statement is as equally plausible as the trial court's interpretation.  As a result, he contends that Braden's statement is, at best, ambiguous.

If the "we" is truly ambiguous, it greatly undermines the evidentiary significance of the statement.  As the Supreme Court has noted, truly "ambiguous circumstantial evidence . . . is as consistent with a hypothesis of innocence as it is with that of guilt . . . [and] is thus insufficient to support [a] conviction[.]"  Young v. Commonwealth, 275 Va. 587, 592 (2008).  Appellant argues that such an ambiguity here required that the trial court acquit him.

---

[5] It is important to recognize that appellant does not argue on appeal that the trial court's interpretation of Braden's statement is implausible or unreasonable.  At oral argument in this Court, he conceded it was a plausible interpretation of the evidence.  He argues only that the trial court had no basis for adopting that interpretation over one more favorable to him.

[6] In addition to stating that "we" went target shooting, Braden also conveyed to Adair at the scene that she did go target shooting with her mother on occasion.  Accordingly, appellant's argument in this regard arises from the evidence and not simply from the capable mind of counsel.

As noted above, in evaluating appellant's sufficiency claim, we do not view pieces of evidence in isolation, but rather, consider them in the context of all of the surrounding circumstances. Moseley, 293 Va. at 466. Accordingly, to determine whether, in context, Braden's statement that "we" went target shooting is ambiguous as a matter of law and prohibits the trial court from interpreting the statement in the manner it did, we turn to the other pieces of evidence and how they bear upon whether appellant possessed the firearm and ammunition.

### IV. Other evidence bearing on possession

#### A. Proximity

The firearm was recovered from "just under the front lip of the passenger seat[,]" the seat in which appellant was sitting. Although the officer testified it was not in plain view, he also indicated that it was not "concealed" either. A holster fitting the firearm was recovered from the glove compartment located directly in front of where appellant was sitting. Accordingly, the firearm in question was not concealed and was recovered within inches of where appellant was seated and a matching holster was found within an arm's length of where appellant was seated.

We recognize both that "the Commonwealth does not meet its burden of proof [regarding constructive possession] simply by showing the defendant's proximity to the firearm" and that proximity "is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm." Bolden, 275 Va. at 148. Thus, although not dispositive, that the firearm was found mere inches from appellant and a matching holster was also within his reach are pieces of evidence that suggest appellant possessed the

contraband in this case. Accordingly, at the margin, these facts make it more likely that appellant possessed the firearm and ammunition.[7]

### B. Appellant's statement

Another fact relied upon by the trial court was appellant's statement to Braden that he "was going to jail" as a result of Adair stopping the car. The statement was made before the arrival of the K-9 unit at a time when, according to Adair, "[t]here was no reason to believe that anybody was going to jail at that point."

The trial court reasonably concluded that appellant's statement evidenced his consciousness of guilt. After all, appellant knew that he was a violent felon and presumably knew that his possession of the firearm and ammunition was illegal, subjecting him to significant jail time.[8] Thus, his statement that he "was going to jail" provides support for the conclusion that appellant knew he was engaged in illegal activity, namely being in possession of a firearm and ammunition after previously having been convicted of a violent felony.

On appeal, appellant acknowledges that a reasonable fact finder could view his statement that he "was going to jail" as evidence that appellant knew he was guilty of a crime and was about to be arrested. However, appellant argues that his statement did not refer to the firearm and ammunition. Rather, he argues on brief that he "had just smoked marijuana" and that "there

---

[7] Although the firearm was found mere inches from where appellant was sitting, the ammunition, which fit the firearm, was found in the trunk. Accordingly, the ammunition was further removed and was not as readily accessible by appellant as was the firearm. However, appellant does not argue that the possession of the ammunition issue can be distinguished in any material way from the possession of the firearm. Given the totality of the evidence and the facts found by the trial court, we conclude that, despite the difference in where the items were found, the issues are inextricably linked. Thus, appellant is either guilty of both offenses or neither of them.

[8] Given his status as a violent felon, appellant faced "a mandatory minimum term of imprisonment of five years[,]" Code § 18.2-308.2, for possessing a firearm.

- 8 -

may have been marijuana in the car[,]" making it reasonable for him to fear being jailed for "possession of marijuana[.]"

This alternative theory, however, suffers from a major flaw: appellant did not possess marijuana at the time the vehicle was stopped. Despite the involvement of a drug dog and a search of the car thorough enough to reveal the firearm, holster, ammunition, and targets, no marijuana was found in the car. No marijuana was recovered from appellant after his arrest on the firearm charge. In fact, the only pieces of evidence of a potential crime that were discovered in the vehicle related to the firearm and ammunition, which neither Braden nor appellant could possess legally.

The absence of marijuana severely undercuts appellant's argument that he feared being jailed for marijuana possession. Certainly a rational fact finder could reject his argument that he had such a fear. Furthermore, given that the only pieces of evidence of potential criminality that the officers discovered related to the possession of ammunition and firearms by felons, a rational fact finder reasonably could conclude that appellant's statement that he "was going to jail" evidenced his consciousness of guilt regarding unlawful possession of a firearm and ammunition.

C. Braden's statement that she was willing to "take the charge"

Another piece of evidence relied upon by the trial court was Braden's statement that she would "take the charge" for any contraband that Adair discovered during his search of the car. As appellant conceded in oral argument in this Court, a rational fact finder could draw certain conclusions from this statement. Specifically, he conceded that a rational fact finder could infer from the statement that: (1) the officers were likely to find contraband in the car; and (2) the contraband did not belong to her.

- 9 -

Of course, the firearm and the ammunition were the only pieces of potential contraband found in the car.[9] Consistent with the reasonable inferences to be drawn from Braden's statement, a fact finder could conclude the firearm and ammunition did not belong to her. Given that appellant was the only other occupant of the car, this strongly suggests that the items were his. Even if not dispositive, this was yet another piece of evidence that could point a rational fact finder towards the conclusion that appellant possessed the firearm and the ammunition.

### D. Appellant's nervousness

Adair noted that, from the beginning of the encounter, appellant would not make eye contact with him and exhibited signs of being nervous. Although hardly dispositive, such behavior is wholly consistent with being worried about being arrested and subsequently prosecuted for being a violent felon in possession of a firearm and ammunition. See generally Lane v. Commonwealth, 223 Va. 713, 716 (1982) (taking into account, for sufficiency purposes, the defendant's "nervous" response); Kelly v. Commonwealth, 41 Va. App. 250, 261 (2003) (*en banc*) (finding relevant that the defendant "appeared nervous during the encounter with the officer"). Thus, it provided the trial court with another piece of evidence that supported the conclusion that appellant was guilty of the charges.

Once again, appellant does not assert that his level of nervousness may not be considered as potentially demonstrating consciousness of guilt. Rather, he offers alternative explanations for his nervousness. He posits that his nervousness could be explained by his fear of being arrested for possession of marijuana or as a result of being fearful about missing cancer treatments. Once again, the evidence provides grounds for the fact finder to reject these alternative explanations.

---

[9] We refer to the items as "potential contraband" because there is nothing inherently illegal about a .38 pistol or ammunition for same. It is the status of Braden and appellant as felons that causes the items to be viewed as contraband.

- 10 -

As noted above, the investigation revealed no recoverable amount of marijuana in the car or in appellant's actual possession. Given that the evidence establishes that appellant was not in possession of marijuana, it was entirely reasonable for the fact finder to reject the premise that appellant was nervous about a potential marijuana charge.

Appellant's second alternative explanation fares no better. He postulates that his nervousness may have stemmed from a fear that he was going to miss his treatments for cancer. A rational fact finder could reject that this was a near term worry because, as Adair noted, the car already had gone past the hospital, which, according to Braden, is where the treatments occur. Thus, a fact finder could conclude that appellant had no fear related to missing an appointment on that day.

To the extent that appellant argues that his worry was more systemic, that being incarcerated would cause him to miss cancer treatments in the future, it is no different than his statement that he "was going to jail." As noted above, the evidence fails to suggest any basis for a reasonable belief that he was subject to arrest for marijuana possession and only suggests that his risk of incarceration was related to possession of a firearm and ammunition by a violent felon. Accordingly, a rational fact finder reasonably could conclude that appellant's nervousness was caused by his fears stemming from his unlawful possession of a firearm and ammunition.

## V. Totality of the evidence

Even without interpreting Braden's statement that "we" were target shooting as including appellant in the "we," the other evidence accepted by the trier of fact supports a conclusion that appellant knowingly possessed the firearm and ammunition. But this other evidence does more: it provides a fuller context for the trial court to use in interpreting who was included in the "we."

The other evidence paints a compelling picture that appellant was aware of the nature and character of the firearm that police recovered. It was under his seat, mere inches from him; he

- 11 -

was worried about being arrested with the only reasonably apparent crime being his possession of the firearm and ammunition; his companion, knowing of the jeopardy appellant faced, volunteered to "take the charge" for him[10]; and his level of nervousness amply support the conclusion that appellant was aware of the presence, nature, and character of the firearm.

Combining these circumstances with Braden's statement, a rational fact finder could conclude that appellant's knowledge of the firearm and ammunition (as well as the targets) came from his having just gone target shooting with Braden. In short, even if, in the abstract, "we were target shooting" can be viewed as ambiguous, leaving it as likely that appellant participated as he did not, the other facts found by the trial court remove the statement from a state of equipoise and provide a non-arbitrary basis for a rational fact finder to conclude that Braden's statement included appellant as a participant in the target shooting. As noted above, appellant's participation in target shooting necessarily confirms his possession as one must have knowledge of the nature and character of a firearm and ammunition and exercise dominion and control over them to engage in target shooting.

Here, the trial court thoroughly reviewed all of the evidence. It made the factual findings described above, detailed its view of each piece of relevant evidence, and explained how those pieces fit together to establish, beyond a reasonable doubt, that appellant possessed both the firearm and ammunition. Its detailed explanation provided a reasonable basis for a fact finder to conclude that appellant was included in Braden's "we." Accordingly, the evidence was sufficient to support appellant's convictions for being a violent felon in possession of a firearm and ammunition.

---

[10] Braden, as a non-violent felon, was not subject to the mandatory minimum provision that applied to appellant. See Code § 18.2-308.2. Additionally, at one point, Braden stated a belief that non-violent felons could possess firearms. Although incorrect in this belief, Braden may have thought that only appellant could be incarcerated for possessing the firearm and ammunition.

Our conclusion that the evidence was sufficient does not mean that every rational fact finder confronted with this evidence necessarily would have reached the same conclusion. Rather, we only hold that, considering the totality of the evidence, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Having done so, our appellate review is at an end because we are "not permitted to substitute [our] judgment, even if [our] opinion might differ from the conclusions reached by the finder of fact at the trial." Chavez, 69 Va. App. at 161 (quoting Banks, 67 Va. App. at 288).

CONCLUSION

For the foregoing reasons, the evidence was sufficient to allow a reasonable fact finder to conclude beyond a reasonable doubt that appellant possessed the firearm and the ammunition that was recovered from the car. Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>

Humphreys, J., dissenting.

The majority holds that the evidence was sufficient to convict Lightfoot of unlawful possession of a firearm and ammunition based on the totality of the evidence in a circumstantial case. While I agree with the majority in its exposition of the law of constructive possession as applicable to a conviction under Code § 18.2-308.2, I disagree with its application of those legal principles to the facts of this case. For the reasons that follow, I respectfully dissent.

Sufficiency of the Evidence

As the majority correctly explains, in order to establish constructive possession, "the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the *presence and character* of the firearm [and ammunition] and that the [items were] subject to his *dominion and control*." Bolden v. Commonwealth, 275 Va. 144, 148 (2008) (emphasis added) (quoting Rawls v. Commonwealth, 272 Va. 334, 349 (2006)).

Here, in the light most favorable to the Commonwealth, the only evidence in this record that establishes these requirements—namely (1) Lightfoot's awareness of the presence and character of the items, and (2) Lightfoot's dominion and control over the items—is a statement by Lightfoot himself and a statement by Braden. However, both statements are ambiguous and are therefore insufficient as a matter of law to convict Lightfoot under the standard set forth in Young v. Commonwealth, 275 Va. 587, 592 (2008). Young provides, "[A]mbiguous circumstantial evidence . . . [that] is as consistent with a hypothesis of innocence as it is with that of guilt" is "insufficient to support [a] conviction." Id. (citing Yarborough v. Commonwealth, 247 Va. 215, 218 (1994)).

While the majority acknowledges the existence of Young, it fails to apply it to the facts of this case. First, testimony at trial established that during the traffic stop, Detective Adair

- 14 -

overheard Lightfoot tell Braden that Lightfoot was "going to go to jail." On its own, this statement is ambiguous in that it provides no internal context. From this statement, the circuit court inferred that Lightfoot must have thought he was going to go to jail because he knew about the firearm and ammunition in Braden's vehicle. However, the record in this case suggests at least one alternative potential reason for the statement. Lightfoot argued at trial and on appeal that he thought he was going to go to jail because he had just smoked marijuana, which Braden confirmed and Lightfoot also confessed to doing during the traffic stop. Although a fact-finder is not required to believe Braden's and Lightfoot's assertions, the ambiguity of Lightfoot's earlier statement remains. Moreover, there was other evidence in the record to support the alternate possibility that Lightfoot's statement referred to his recent use of marijuana. The drug dog alerted on the passenger side door of Braden's vehicle, where Lightfoot was sitting. This fact and the lack of context for Lightfoot's statement left the meaning of Lightfoot's statement that he was "going to jail" in equipoise. See Haskins v. Commonwealth, 44 Va. App. 1, 9 (2004) (explaining that if after the finder-of-fact resolves conflicting evidence, "the evidence of guilt or innocence remains anywhere near equipoise—that is, the facts are 'equally susceptible to two or more constructions'—then reasonable doubt exists as a matter of law"). It is sheer speculation under the totality of the circumstances to find that "I'm going to jail" necessarily meant that Lightfoot had awareness of the presence and character and exercised dominion and control over the firearm and ammunition found in Braden's car.

Second, the circuit court and the majority rely on Braden's equally ambiguous statement, "we were target shooting at my mother's" as evidence that Lightfoot must have exercised dominion and control over the gun found in Braden's car. However, it is unclear from the record whether the word "we" referred to Lightfoot and Braden or Braden and her mother. To further complicate the issue, the circuit court relied on a misstatement by the officer of what Braden's

- 15 -

statement actually was. The body camera footage admitted in this case reveals that, when asked about the paper targets found in her vehicle's trunk, Braden actually stated, "You can just *call my mom . . . . We* target practice at *her* house." (Emphasis added). In context, this statement can just as plausibly refer to Braden and her mother as Braden and Lightfoot and thus is as inconsistent with exercising past dominion and control over a gun as it is consistent. Indeed, presumably the police or the prosecutor could have easily resolved this ambiguity by simply taking Braden up on her offer: they could have called her mother and quickly determined whether or not Lightfoot had been target shooting with Braden or whether it was Braden's mother who had done so.

Last, the majority states, "Even without interpreting Braden's statement that 'we' were target shooting as including appellant among the 'we,' the other evidence accepted by the trier of fact supports a conclusion that appellant knowingly possessed the firearm and ammunition." Ante at 11. Yet, the only other evidence in this case is Lightfoot's proximity, which is insufficient as a matter of law, and Lightfoot's ambiguous statement that he was "going to go to jail." See Walton v. Commonwealth, 255 Va. 422, 426 (1998) (stating that mere proximity is insufficient to prove possession). Assuming, *arguendo*, that his belief that he was going to go to jail could establish awareness of the firearm and ammunition, it certainly could not establish dominion and control.

Further, it is noteworthy that the majority's analysis combines the firearm and ammunition charges without addressing the fact that the ammunition was found in the trunk of a vehicle Lightfoot neither owned nor operated and to which he had no close proximity or ready access. In finding the evidence of possession of the ammunition sufficient, the majority states, "Obviously, if appellant had just finished a round of target shooting at Braden's mother's house, he necessarily possessed both a firearm and ammunition in violation of Code § 18.2-308.2."

<u>Ante</u> at 6.  Aside from the additional round of sheer speculation engaged in by the majority that is needed to reach the conclusion that Lightfoot and Braden had just completed a session of target shooting, contrary to the majority's assertion, even if Lightfoot had exercised dominion and control over the gun at some indefinite point while shooting, there would still not be a connection to the ammunition found in the trunk of a vehicle to which he neither had the keys nor owned.  Therefore in my view, there is likewise insufficient evidence that Lightfoot possessed the ammunition, constructively or otherwise.

In summary, my problem with the majority's analysis is that in order to arrive at its overall judgment, the majority's analysis stacks ambiguous circumstantial evidence upon more ambiguous circumstantial evidence contrary to the holding in <u>Young</u>.  To accept the majority's conclusion is to allow a fact-finder to speculate about the meaning of ambiguous evidence that is just as consistent with guilt as with innocence, and then to use the result of that speculation in interpreting other equally ambiguous evidence.

Because the evidence in this case is too indefinite to eliminate other reasonable hypotheses of innocence equally supported by the record, I would reverse the circuit court's judgment and dismiss the indictments.