COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Ortiz, Lorish and Senior Judge Petty
Argued at Lexington, Virginia


JAQUAN WANYA CARTER

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0751-23-3                      JUDGE WILLIAM G. PETTY
                                                         APRIL 30, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

Michelle C.F. Derrico, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The Circuit Court for the City of Lynchburg convicted Jaquan Carter of possession of a

firearm by a convicted violent felon and carrying a concealed weapon, in violation of Code

§§ 18.2-308.2 and 18.2-308, respectively.  Carter contends that the trial court erred in finding the

evidence sufficient to support his convictions.  For the following reasons, we affirm the court below.

BACKGROUND

Lynchburg Police Officer Kirby was on duty driving his police vehicle when he observed

Carter driving an orange Dodge Challenger.  Knowing that Carter had outstanding warrants for his

arrest, Officer Kirby followed the Challenger and attempted to initiate a traffic stop.  After initially

failing to stop, Carter eventually pulled over.  By that time, a female, later identified as Destiny

Murphy, was in the driver's seat and Carter had moved to the passenger side of the car.  Officer

Kirby drew his weapon and ordered the occupants out of the car at gunpoint.  At first, Carter got

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

out, but then leaned back inside. Officer Kirby observed Murphy "digging around near the . . . front passenger floorboard area" of the car. Officer Kirby again ordered Carter out of the car and took him into custody. He also ordered Murphy out of the car and asked permission to search it, which she granted.

In the meantime, Officer McCraw responded to the traffic stop. Officer McCraw observed Carter in the passenger seat and Murphy in the driver's seat of the Challenger. Officer McCraw saw Murphy make furtive movements in Carter's direction and Carter make furtive movements "into the center console." Carter was "digging around, moving quickly in the bottom of the floorboard." He then "sat back up and was moving around with his hands quickly and abruptly" in the area of the center console. After Carter got out of the car, Officer McCraw observed him re-enter and start to make "more movements in the center area of the vehicle with his hands as if he was digging around." Carter then followed Officer Kirby's commands to get out of the car and step away.

Officer Kirby and another responding officer, Officer Pupillo, searched the Challenger. Officer Kirby found two nine-millimeter bullets in the bottom of the center console, while Officer Pupillo recovered a Glock 26 nine-millimeter handgun from between the center console and the driver's seat. The firearm was "sort of tucked in between the driver's seat and the center console in front of the seat belt clip." Officer Pupillo did not have to manipulate the seat to find the gun; the gun's magazine was observable as he leaned into the driver's side of the vehicle. However, at first, Officer Pupillo was not sure that it was a firearm and "had to reach in and grab it to see." The handgun contained a 17-round extended magazine that only held 6 rounds of ammunition. Officer Kirby collected the firearm and the ammunition and submitted them to property and evidence at the police department. He later testified that the firearm was "designed to expel [a] projectile by explosive force."

After the Commonwealth presented its evidence, Carter moved to strike and argued that the evidence failed to prove he was aware of the presence of the firearm in the vehicle or that he exercised dominion and control over it. The trial court denied the motion.

Murphy testified on Carter's behalf that she was driving the Challenger when Officer Kirby first spotted her car. Murphy explained that after she stopped her car during the traffic stop, she leaned down to get her shoes and then got out as instructed. Murphy stated that the gun belonged to her and presumed that it fell out of her purse and "went under the seat." She testified that Carter was not aware she had the gun.

In rebuttal, Officer Kirby testified that before he searched the car, Murphy told him there was no weapon in it. After the search, she said she had forgotten the gun was there. Officer Kirby also testified that Murphy told him she and Carter had switched places in the vehicle.

Following Carter's renewed motion to strike and closing arguments, the trial court convicted Carter of possession of a firearm by a convicted violent felon and carrying a concealed weapon.[1] This appeal followed.

## ANALYSIS

### I. Possession of a Firearm

Challenging the sufficiency of the evidence to sustain his conviction, Carter argues that the evidence failed to prove he was aware of the presence and character of the firearm and that it was subject to his dominion and control.[2] We disagree.

"[W]hen a defendant challenges the sufficiency of the evidence, we view the evidence and all reasonable inferences in the light most favorable to the Commonwealth, the prevailing party in

---

[1] Carter had also been charged with being a felon in possession of ammunition based on the two bullets found in the center console. The court acquitted him of that charge.

[2] There is no dispute that the Glock was, in fact, a firearm or that Carter was previously convicted of a violent felony.

the trial court." *McArthur v. Commonwealth*, 72 Va. App. 352, 367 (2020) (quoting *Rowland v. Commonwealth*, 281 Va. 396, 399 (2011)). "The judgment of conviction will be reversed only when the ruling is plainly wrong or without evidence to support it." *Id.* (quoting *Cordon v. Commonwealth*, 280 Va. 691, 694 (2010)). We do not ask ourselves whether we believe the evidence at trial established proof beyond a reasonable doubt. *Williams v. Commonwealth*, 278 Va. 190, 193 (2009). Instead, "'the relevant question is,' upon review of the evidence in the light most favorable to the prosecution, 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257-58 (2003) (en banc)).

"There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence. The finder of fact is entitled to consider all the evidence, without distinction, in reaching its determination." *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005). In fact, "circumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000). That is, the circumstances proved "must *concur* in pointing to the defendant as the perpetrator beyond a reasonable doubt." *Rams v. Commonwealth*, 70 Va. App. 12, 37 (2019) (quoting *Cantrell v. Commonwealth*, 229 Va. 387, 398 (1985)). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may

- 4 -

lead a reasonable mind irresistibly to [the] conclusion'" that the defendant is, in fact, guilty. *Id.* (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

"It shall be unlawful for . . . any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm . . . ." Code § 18.2-308.2(A). A firearm is "an instrument which was designed, made, and intended to expel a projectile by means of an explosion." *Armstrong v. Commonwealth*, 263 Va. 573, 584 (2002). "A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession. Evidence of actual possession is not necessary." *Rawls v. Commonwealth*, 272 Va. 334, 349 (2006). Additionally, possession "may be joint" and "need not always be exclusive. The defendant may share [the weapon] with one or more." *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 741 (1970)).

"To establish constructive possession . . . the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." *Rawls*, 272 Va. at 349. Where, as here, contraband is found in a vehicle, the fact finder may infer that any occupant of the vehicle "possessed contraband that was located" in the vehicle, if the occupant is "shown to have exercised dominion and control over the premises and to have known of the presence, nature, and character of the contraband at the time of" his occupancy. *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992). While mere proximity to the firearm or occupancy of the vehicle in which the firearm is found will not, in and of themselves, satisfy the Commonwealth's burden of proof, they are "circumstances probative of possession and may be considered as factors in determining whether the defendant possessed the firearm." *Rawls*, 272 Va. at 350. Moreover, actions by an accused including flight, concealment, and attempts to disguise their identity "are admissible as evidence of consciousness of guilt, and thus of guilt itself."

*Leonard v. Commonwealth*, 39 Va. App. 134, 149 (2002) (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991)). Such actions may be considered in the context of other facts as evidence tending to show a defendant's consciousness of guilt. *Jones v. Commonwealth*, 279 Va. 52, 58 (2010).

The circumstances of this case, viewed in totality, supported the trial court's finding that Carter was aware of the presence and character of the firearm inside the vehicle and that he exercised dominion and control over it. Indeed, the evidence proved that Carter was initially driving the Challenger as he passed Officer Kirby. Murphy was in the passenger seat. Officer Kirby knew that Carter had outstanding warrants for his arrest and attempted to initiate a traffic stop. Instead of pulling over and stopping the car, Carter continued to drive, moving "back and forth various times on various streets," before finally bringing the car to a stop. Murphy and Carter then exchanged positions—Murphy moved to the driver's seat and Carter moved to the passenger seat. Officer McCraw observed Murphy and Carter both moving around in the vehicle, making furtive movements and "digging around" toward the passenger seat floorboard *and* the center console. After Carter exited the vehicle, he re-entered it and continued to make movements in the "center area of the vehicle," where the gun was ultimately found, before finally submitting to Officer Kirby's instructions. Officer Pupillo located the Glock 26 firearm tucked between the center console and the driver's seat, within Carter's reach from either side of the vehicle, and the magazine was visible to Officer Pupillo when he leaned into the vehicle to conduct the search.

Any reasonable fact finder could conclude on these facts, viewed together, that Carter and Murphy were both aware of the presence of the firearm and that they acted in concert to conceal it from view before exiting the vehicle. Guilty knowledge can be inferred from furtive behavior when police approach. *Hawkins v. Commonwealth*, 288 Va. 482, 486 (2014). Notwithstanding Murphy's denials, the actions Carter took indicated he knew the gun was next to the center console and that he

made efforts to conceal it. He and Murphy exchanged seats before submitting to the traffic stop, he made furtive movements inside the car, and then he re-entered the vehicle and reached toward the center console after being told, at gunpoint, to exit. These circumstances supported the trial court's finding that Carter was aware of the firearm's presence in the place it was ultimately found and that he possessed it.

Murphy's testimony does not alter that conclusion, especially considering that the trial court expressly found she was not credible. "Determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). The circumstances indicated that Murphy and Carter were both aware of the gun's presence. It is well-settled that "[p]ossession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly." *Smallwood*, 278 Va. at 631 (quoting *Burnette v. Commonwealth*, 194 Va. 785, 792 (1953)). While it is true, as Carter contends, that mere proximity to a firearm will not alone establish constructive possession, the evidence presented in this case proved more than his mere proximity to the gun. The record includes additional factors upon which the trial court could conclude, as it did, that Carter committed the offense.

We find that the evidence as a whole supported the trial court's factual finding that Carter was aware of the presence of the firearm and that he exercised dominion and control over it. We will therefore affirm his conviction for possession of a firearm by a convicted violent felon.

## II. Carrying a Concealed Weapon

For similar reasons, Carter contends that the evidence failed to prove he carried a concealed weapon about his person. For similar reasons, we disagree.

"If any person carries about his person, hidden from common observation, (i) any pistol, revolver, or other weapon designed or intended to propel a missile of any kind by action of an explosion of any combustible material . . . he is guilty of a Class 1 misdemeanor." Code § 18.2-308(A). The phrase carry "about his person" means that the firearm must be "so connected with the person as to be readily accessible for use or surprise if desired." *Hunter v. Commonwealth*, 56 Va. App. 50, 64 (2010) (quoting *Sutherland v. Commonwealth*, 109 Va. 834, 835 (1909)). "Judicial use of the term 'readily' simply recognizes that the availability contemplated by the statute means 'in a ready manner' or 'without much difficulty.'" *Id.* (quoting *Watson v. Commonwealth*, 17 Va. App. 124, 127 (1993)). That is, the firearm's accessibility "depends significantly on the location of the weapon in relation to the accused." *Id.*

We have already concluded that Carter was aware of the gun's presence and that he possessed it. He, nevertheless, disputes that he concealed it. We disagree. The evidence established that the firearm was tucked between the driver's seat and the center console, near in proximity to where Carter was seated both when he was in the driver's seat and when he was in the passenger seat. Although the magazine was readily apparent to Officer Pupillo when he leaned into the vehicle, he testified that he was not sure it was a firearm until after he pulled it out from between the console and the seat. The firearm was therefore at all times within Carter's reach and accessible for his prompt and immediate use or surprise, but concealed from view. On these facts, a reasonable fact finder could conclude that Carter carried the firearm about his person, hidden from common observation, and thus, we affirm his conviction for carrying a concealed weapon.

CONCLUSION

The facts of this case viewed in totality supported the trial court's findings that Carter was aware of the presence and nature of the firearm, that it was within his reach and concealed from

view, and that he exercised dominion and control over it. We, therefore, affirm Carter's convictions for possession of a firearm by a convicted violent felon and for carrying a concealed weapon.

*Affirmed.*