# COURT OF APPEALS OF VIRGINIA

## Record No. 0429-25-1

VERLANDON LAVELLE SMITH
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Causey, White and Frucci

Argued at Virginia Beach, Virginia

Opinion Issued April 14, 2026[*]

### FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Scott Joseph Flax, Judge

Roger A. Whitus (Slipow & Robusto, P.C., on brief), for appellant.

Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE KIMBERLEY SLAYTON WHITE

At a bench trial, the trial court found Verlandon Lavelle Smith guilty of possessing a firearm after being convicted of a nonviolent felony. On appeal, Smith alleges that the trial court erred in finding the evidence sufficient to prove beyond a reasonable doubt that he constructively possessed the firearm found in the closed center console of his wife's vehicle. We conclude, however, that "the combined force of many concurrent and related circumstances" established by the Commonwealth's evidence could reasonably lead a rational jurist to find that Smith knowingly and intentionally possessed the firearm. *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005). Accordingly, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

## BACKGROUND[2]

### I. Shooting at the Double D's Pub

On October 28, 2023, sometime before midnight, Smith drove alone to Double D's, a local pub in Virginia Beach. He drove his wife's GMC Denali SUV. Leaving a wedding band near the cup holder of the vehicle, Smith exited the vehicle, met a woman at the bar in the pub, and began to flirt with her to get her telephone number. Smith did not know the woman's name, but the police later identified her as Zakaria Horton. Later, Smith moved the Denali to a corner parking space, but he again was alone inside the vehicle.

Smith ended up becoming a part of a group of patrons at the pub. At the time, there was "some sort of a Halloween party going on." Shortly after the group walked outside, there was some "commotion" and, at about 1:00 a.m., Horton pulled a handgun from her purse and fired at a passing car in the parking lot. The bullet first went through the right passenger door, then through the center console, and then into the driver's leg, resulting in a fracture. The victim immediately called 911 at 1:05 a.m.

Afterwards, some members of Smith's group tried to console Horton and then they went back inside the pub. A short time later, some in the group came back outside and walked to the Denali SUV parked in the back left corner of the parking lot by a stop sign. Ultimately, Smith walked with Horton to the Denali where he opened the front passenger door and allowed her to sit briefly in the vehicle before they both left the parking lot on foot as police arrived. Smith and Horton walked directly across the street to another establishment called L.A.'s Gentlemen's Club where the police eventually located them.

---

[2] Applying familiar principles of appellate review, we state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

## II.  Police Investigation of the Double D's Shooting

In response to the victim's 911 call, several members of the Virginia Beach Police Department went to the Double D's pub.  Upon his arrival, Detective Zachary Kubera viewed Double D's outdoor and indoor security camera video recordings of activities before, during, and after the shooting.  The outdoor video showed a group of people, including Smith, exiting the nightclub and then Horton, a woman "with dreads" and wearing a black leather suit, retrieving a firearm from her purse and shooting at a passing car.  It then showed Smith and another man attempting to "console" Horton.  Shortly thereafter, Horton, Smith, and their group re-entered the pub, but they exited the establishment again and approached the GMC Denali parked in a corner space at the back side of the parking lot.  The video showed Horton and Smith opening the passenger door of the vehicle and Horton entering it.  From Detective Kubera's perspective, Smith and Horton appeared to be "fumbling around with something."

Based on what Detective Kubera saw while viewing the security camera footage, Virginia Beach Detectives Jeff Crawford and Daniel Walker walked over to the GMC Denali.  When they looked through one of the windows of the vehicle, the detectives saw a pink handgun lying on the front passenger-side floorboard.  In response, Detective Crawford and Detective Walker had the Denali sealed and towed from the scene to be searched at the police department's forensics bay.  At the forensics bay, Forensic Specialist Emily Baucom processed the Denali.  She first photographed the exterior of the vehicle.  She then searched and photographed the vehicle's interior, including the closed center console and its contents.

Upon lifting the lid of the center console, Baucom first saw some napkins and a box of vehicle headlight bulbs.  Then, upon removing the napkins and light bulbs, she saw a second firearm, a black Taurus 9 mm handgun, on top of Smith's various work identification cards and badges, lanyards, a Visa business debit card, and a voided Virginia commercial driver's license.

The driver's license and most of the work identification cards and badges displayed Smith's name and facial photograph. The black Taurus firearm was fully concealed by the napkins and lightbulbs. During her search of the vehicle, Baucom also spotted a ring that appeared to be a wedding ring in the cup holder area. The police later confirmed that the recovered pink handgun was the firearm that Horton used in the shooting.[3]

During the initial crime investigation, Virginia Beach Police Officer C. Girvin viewed security camera video of the inside of Double D's and saw Horton and Smith in the pub. He then located Horton and Smith at the L.A.'s Gentlemen's Club across the street. When Officer Girvin walked to the bar in the back, he saw Horton standing at the bar and "[s]he kind of had her head hidden down in [Smith's] chest."

Upon his arrival at the crime scene, Virginia Beach Detective Martin Moore immediately went to the L.A.'s Gentlemen's Club. He then spoke with Smith who was standing outside the front door of the business at this time. Smith admitted that he had been at Double D's where he met Horton before leaving for the L.A.'s Gentlemen's Club. He also admitted hearing a gunshot, but he denied seeing "anything." He stated that he left Double D's and went to the L.A.'s Gentlemen's Club because "he was going to comfort the girl." Smith insisted that he did not see Horton shoot a gun, but he was told that it was a female who did the shooting, and he thought that was strange because "it's usually not a female."

Later, Virginia Beach Detective Crawford, the lead investigator, more fully questioned Smith at the police station after informing him of his *Miranda* rights.[4] Smith admitted that he drove the GMC Denali, but he denied knowing anything about Horton, the pink firearm, or the shooting.

---

[3] At trial, the Commonwealth asserted that their prosecution of Smith was not based on the pink handgun used in the shooting and later found in the Denali.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

He stated that he was married, and he had just met Horton and was flirting with her to get her telephone number. Smith also said that he was employed by Coca-Cola and drove 18-wheeler tractor trailers, which required him to maintain a commercial driver's license.

Smith also denied owning the Denali and stated that his wife was the owner. He further stated that his wife owned a firearm that she sometimes kept in the car and, when he knew that her firearm was in the car, he would ask her to remove it before driving the car. He explained that he "knows he's a felon" and "[h]e knows what he can and what he [cannot] do." Smith also admitted, however, that there were times when he had handled his wife's firearm to remove it from the car and return it to her. When confronted about having the firearm in the vehicle that day, Smith stated that he could not check the car every time he used it, and he could not tell his wife not to store the firearm in the car because the car was hers.

### III. Smith's Bench Trial for Possession of a Firearm by a Nonviolent Felon

Smith pleaded not guilty to the charge of possessing a firearm after being convicted of a nonviolent felony and waived a jury trial. At this trial, Detective Kubera, Officer Girvin, Detective Moore, Detective Walker, Forensic Specialist Baucom, and Detective Crawford were witnesses for the Commonwealth. Through their testimony, the Commonwealth established the facts recited above.

In addition, the Commonwealth introduced the following evidence: (1) a copy of the Double D's surveillance camera video, (2) certified copies of the sentencing order and corrected order for Smith's previous grand larceny conviction, (3) photographs of the GMC Denali SUV in the Double D's parking lot, (4) photographs of the pink handgun on the floor of the Denali, (5) photographs of the exterior of the Denali at the police department forensic bay, (6) photographs of the Denali's center console and contents, (7) photographs of the Taurus 9 mm handgun, (8) the actual identification cards and lanyards, (9) the actual Taurus 9 mm handgun, (10) a certificate of analysis

confirming that the Taurus handgun was operable, and a certificate of analysis confirming that no DNA profile was obtained from the swab of the Taurus handgun. The Commonwealth played the Double D's video for the trial judge.

At the conclusion of the Commonwealth's case-in-chief, Smith moved to strike the evidence and argued that the Commonwealth did not prove that Smith had constructively possessed the firearm recovered from the GMC Denali vehicle. Smith contended that there was no evidence that he actually knew that his wife's firearm was in her vehicle when he drove it to Double D's and that he had exercised any "dominion and control" over the firearm. He asserted that there was "no evidence that he was inside that center console that night." He further asserted that there was no evidence as to when his identification cards and other personal items were placed in the center console. The trial court found, however, that the Commonwealth "ha[d] established at least potentially constructive possession" and denied the motion to strike.

Afterwards, Smith presented no evidence and renewed his motion to strike, incorporating by reference his previous arguments. Then, without ruling on the motion, the trial court agreed to hear closing arguments. During his closing argument, Smith again argued that "the evidence [was] not sufficient to prove beyond a reasonable doubt that [he] knew that there was a gun in that center console that night, and therefore he could not have possessed it."

The trial court again disagreed. It found that the Commonwealth had met its burden of proving guilt beyond a reasonable doubt. It stated that there were "enough[] facts," especially Smith's acts of keeping his personal IDs in the center console with the firearm and leaving a wedding ring near the console. He allowed Horton to put her firearm in his vehicle, which suggested that Smith had no problem with having a firearm in the vehicle. It thus found Smith guilty of possession of a firearm by a nonviolent felon.

ANALYSIS

A. Principles of Appellate Review

"When faced with a challenge to the sufficiency of the evidence, [this Court must] 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence' to support it." *Crowder v. Commonwealth*, 41 Va. App. 658, 662 (2003) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). We must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Kelly*, 41 Va. App. at 257 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "If there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." *Conrad v. Commonwealth*, 31 Va. App. 113, 123 (1999) (en banc) (quoting *Commonwealth v. Presley*, 256 Va. 465, 466-67 (1998)). "It has long been deemed 'an abuse of the appellate powers to set aside a verdict and judgment, because an appellate court, from the evidence as written down, would not have concurred in the verdict.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)).

In determining whether a trial court's judgment was plainly wrong or unsupported by the evidence, we view "the evidence in the light most favorable to the Commonwealth, as 'the prevailing party in the trial court.'" *Cornelius v. Commonwealth*, 80 Va. App. 29, 34 n.2 (2024) (quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 624 (2019)). "We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008) (quoting *Riner v. Commonwealth*, 268 Va. 296, 303 (2004)). "This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial."

*Barney*, 302 Va. at 97 (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). We must consider, therefore, both direct and circumstantial evidence in the record. *See Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) ("Our inquiry does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" (quoting *Commonwealth v. Hudson*, 265 Va. 505, 512-13 (2003))).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "However, '[w]hether the Commonwealth relies upon either direct or circumstantial evidence, it is not required to disprove every conceivable possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt.'" *Cantrell v. Commonwealth*, 7 Va. App. 269, 289 (1988) (alteration in original) (quoting *Bridgeman v. Commonwealth*, 3 Va. App. 523, 526-27 (1986)).

Thus, "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993). Whether a hypothesis of innocence is reasonable is a question of fact, *Cantrell*, 7 Va. App. at 290, and a fact finder's "rejection of a hypothesis of innocence 'is binding on appeal unless plainly wrong,'" *Ervin v. Commonwealth*, 57 Va. App. 495, 519 (2011) (en banc) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 13 (1997)). Therefore, we must reject a potentially innocent hypothesis "*even* if there is 'some evidence to support' [it]." *Id.* (quoting *Hudson*, 265 Va. at 513).

B. Knowing and Intentional Possession of a "Firearm"

Code § 18.2-308.2(A) provides, in pertinent part, that "[i]t shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm." A conviction under this statute "requires proof beyond a reasonable doubt of *either* actual or constructive possession of the firearm." *Hancock v. Commonwealth*, 21 Va. App. 466, 468 (1995) (emphasis added). Thus, "[a] conviction for the unlawful possession of a firearm by a felon can be supported exclusively by evidence of constructive possession. Evidence of actual possession is not necessary." *Rawls v. Commonwealth*, 272 Va. 334, 349 (2006). Whether actual or constructive possession, however, "[l]iability under Code § 18.2-308.2 requires proof that the accused 'knowingly and intentionally possess[ed] . . . any firearm.' Thus, the Commonwealth must prove a defendant's *actual* knowledge of the firearm." *Hancock*, 21 Va. App. at 469 (second and third alterations in original) (emphasis added). It must establish that "the defendant intentionally and consciously possessed the [firearm] with knowledge of its nature and character." *Morris v. Commonwealth*, 51 Va. App. 459, 465-66 (2008).

"To establish constructive possession of the firearm by a defendant, 'the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control.'" *Bolden*, 275 Va. at 148 (quoting *Rawls*, 272 Va. at 349). Constructive possession "may be joint" and "'need not always be exclusive. The defendant may share [the firearm] with one or more [persons].'" *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 741 (1970)). Proximity to the firearm "is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm." *Bolden*, 275 Va. at 148. While ownership of a firearm is relevant to the possession inquiry, "it is not dispositive." *Smallwood*, 278 Va. at 631.

Rather, "[p]ossession and not ownership is the vital issue." *Id.* (quoting *Burnette v. Commonwealth*, 194 Va. 785, 792 (1953)).

"In determining whether the evidence is sufficient to permit a rational factfinder to conclude that a defendant constructively possessed an item, 'an appellate court must consider all the evidence admitted at trial[.]'" *Commonwealth v. Garrick*, 303 Va. 176, 183 (2024) (alteration in original) (quoting *Bolden*, 275 Va. at 147). "A conviction may rest on circumstantial evidence alone; in fact, 'in some cases circumstantial evidence may be the only type of evidence which can possibly be produced.'" *Id.* at 183-84 (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Most often a circumstantial fact, viewed in isolation, will be insufficient to establish a basis for a conviction. Appellate courts, however, 'eschew the divide-and-conquer approach, which examines each incriminating fact in isolation[.]'" *Id.* at 184 (alteration in original) (quoting *Barney*, 302 Va. at 97). Thus, "[c]ircumstantial evidence is not viewed in isolation. While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." *Muhammad*, 269 Va. at 479.

C. Circumstantial Evidence of Smith's Constructive Possession of a Firearm

In this case, the trial court found that the Commonwealth met its burden of establishing "enough[] facts" to prove that Smith constructively possessed the firearm found in the closed center console of his wife's vehicle on October 29, 2023. Viewing all the evidence in the most favorable light to the Commonwealth and drawing all reasonable inferences from that evidence, we conclude that this finding was neither wrong nor without sufficient supporting evidence. At trial, the Commonwealth established facts that were individually insufficient to support a finding of constructive possession but were collectively sufficient to establish "many concurrent and related circumstances." *Muhammad*, 269 Va. at 479. We hold that the combined force of these

circumstances could reasonably lead a rational jurist to find that Smith knowingly and intentionally possessed a firearm on October 29, 2023, as alleged in the indictment.

By video and photographic evidence, testimonial evidence, and physical evidence, the Commonwealth established several "circumstantial facts"[5] relevant to the issue of constructive possession at trial. First, by Smith's own admission, the Commonwealth established that Smith was the driver and sole occupant of the GMC Denali SUV containing the black Taurus 9 mm handgun. As such, he was the only person who had the ability and opportunity to exercise dominion and control over the interior in the vehicle. "In determining whether a defendant constructively possessed a firearm, the defendant's proximity to the firearm and his occupancy . . . of the vehicle must . . . be considered." *Logan v. Commonwealth*, 19 Va. App. 437, 444 (1994) (en banc).

Second, as the driver and sole occupant, Smith was the only person who was within arm's reach of the center console. Thus, he was the only person who had access to the center console upon arriving at the Virginia Beach pub. *See Brown v. Commonwealth*, 5 Va. App. 489, 492 (1988) ("[defendant] was *within arm's reach* of the cocaine").

Third, by police officers' testimony and photographs of the contents of the center console, the Commonwealth established that the Taurus 9 mm handgun was in the center console and was *lying on top of* several items bearing either Smith's name alone or both Smith's name and facial photograph, including work-related identification badges, a bank business debit card, and a voided Virginia commercial driver's license. In addition, none of the items in the center console appeared to belong to Smith's wife.

---

[5] "A circumstantial fact is admitted on the basis of an inference when the inference is a probable explanation of another fact and a more probable and natural one than other explanations, if any." *Toler v. Commonwealth*, 188 Va. 774, 780 (1949).

From these facts, the trial court could reasonably infer that Smith knowingly and intentionally possessed the firearm in the center console because he stored it in a place where he desired to keep other personal items. *See Lewis v. Commonwealth*, 76 Va. App. 92, 103 (2022) (holding that a rational fact finder could conclude that the defendant knowingly and intentionally possessed methamphetamine in a duffle bag in a pickup truck because, even though he did not own the truck, he had used it for several days just before the incident, and police found his personal property throughout the truck, including his employee "name badge" beside a firearm in the center console); *see also Albert v. Commonwealth*, 2 Va. App. 734, 742 (1986) (holding that the evidence established that the defendant possessed contraband that was near "his wallet, identification papers and a bottle of prescribed medicine bearing his name"). The fact that nothing in the console suggested that Smith recently had placed the firearm or the personal IDs in the center console did not diminish the probative value of the proof of their shared location as evidence of his knowing possession of the firearm on October 29, 2023.

The trier of fact was entitled to infer that Smith, having placed the firearm on top of the various forms of identification in the center console, would not forget where he had stored such a valuable item. "As [this Court] previously has recognized regarding drugs found in a glove compartment, '[a] factfinder is permitted to infer that "[items] . . . of significant value[ are] unlikely to be abandoned or carelessly left in an area."'" *Garrick*, 303 Va. at 186 (all but first alteration in original) (quoting *Ervin*, 57 Va. App. at 517).

Fourth, by the video evidence, the Commonwealth established that, after Horton shot a motorist in the nightclub parking lot, Smith escorted her to the Denali where he opened the front passenger door and she, in turn, entered the vehicle and appeared to be "fumbling around with something." And by photographic evidence, the Commonwealth established that, during a

subsequent search of the Denali, police discovered Horton's pink handgun on the front passenger floorboard in plain view.

Together, this evidence established that, despite later telling the police that he knew nothing about a pink handgun, Smith knowingly and intentionally allowed Horton to place her firearm in his vehicle, revealing, as the trial court found that he was "willing to have a gun in the car" even though he knew what he could and could not do as a felon.[6] Also, by stating to police that he sometimes would remove his wife's handgun from the Denali, and he occasionally did not have time to check her vehicle for presence of a firearm, Smith further confirmed that he was comfortable with briefly possessing a firearm.

Finally, by police testimony as to Smith's conflicting statements about whether he always told his wife to remove any firearms from her vehicle before he drove it, the Commonwealth established his lack of credibility in answering police questions. Thus, as the trier of fact, the trial court was entitled to reject his various denials, including his statement denying knowledge of the presence of the Taurus firearm in the Denali on the morning of October 29, 2023. In fact, it "was at liberty to discount [Smith's] self-serving statements as little more than lying to 'conceal his guilt,' and could treat such prevarications as 'affirmative evidence of guilt.'" *Sierra v. Commonwealth*, 59 Va. App. 770, 784 (2012) (quoting *Armstead v. Commonwealth*, 56 Va. App. 569, 581 (2010)).

We therefore conclude that Smith's assignment of error has no merit. The trial court did not err in finding the circumstantial evidence sufficient to prove beyond a reasonable doubt that

---

[6] Smith did not raise the rule regarding propensity inferences or Virginia Rule of Evidence 2:404(b) as an objection to this finding below. Therefore, for purposes of this appeal, we assume without deciding that considering Smith's willingness to store Horton's gun posed no propensity issues.

Smith, a nonviolent felon, constructively possessed a firearm on October 29, 2023, as alleged in the indictment.  Accordingly, we affirm the trial court's judgment.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*